932 P.2d 1237 (1997)
131 Wash.2d 469
The STATE of Washington, Respondent,
v.
John WALDEN, Petitioner.
No. 63992-2.
Supreme Court of Washington, En Banc.
Argued October 23, 1996.
Decided March 13, 1997.
*1238 Society of Counsel Representing Accused Persons, Bruce L. Brown, Seattle, WA, for Petitioner.
Jim H. Krider, Snohomish County Prosecutor, Edward Stemler, Deputy, Everett, WA, for Respondent.
JOHNSON, Justice.
John Walden was convicted of two counts of second degree assault arising out of a fight with three teenagers. At trial, Walden asserted self-defense. Walden argues the definition of grave bodily harm in the jury instruction addressing the reasonable use of force in self-defense improperly required the jury to use a purely objective standard. We agree, reverse his convictions, and remand for a new trial.

FACTS
On October 23, 1993, Walden left a tavern in Arlington, Washington and got on his bicycle. He rode past The Castle video arcade, outside of which several teenagers were standing, including the three victims: Josh Adams, Grant Howell, and Casey Hill. As he rode past, Walden either fell or was pushed off his bicycle. According to the teens, Walden fell off the bicycle, got angry when they laughed at him, and came after them with a knife. On the other hand, Walden testified the teens pushed him off his bicycle and were then looking to beat him up.
At some point during the altercation, Walden produced and opened a folding knife with a 3½-inch locking blade. The teens and several witnesses testified Walden attempted to use the knife. Walden, however, testified he only produced the knife to scare the teens off, and did not actually try to use the knife. No evidence or testimony was offered by either side that the three teens were armed. However, there was testimony Walden and these same three teens had been involved in an altercation on at least one previous occasion.
Following the close of Walden's case, the judge issued jury instructions, including seven instructions on self-defense.[1] Walden objected to the definition of "great bodily injury" in the second paragraph of instruction 18. In its entirety, instruction 18 reads:
One has the right to use force only to the extent of what appears to be the apparent imminent danger at the time. However, when there is no reasonable ground for the person attacked or apparently under attack to believe that his person is in imminent danger of death or great bodily harm, and it appears to him that only an ordinary battery is all that is intended, he has no right to repel a threatened assault by the use of a deadly weapon in a deadly manner.
Great bodily injury as used in this instruction means injury of a graver and more serious nature than an ordinary battery with a fist or pounding with the hand; it is an injury of such nature as to produce severe pain, suffering and injury.
Clerk's Papers at 37. The judge noted Walden's objection but allowed the instruction, stating that the case from which it was taken, State v. Foster, 91 Wash.2d 466, 481, 589 P.2d 789 (1979), had not been overruled. Apparently *1239 the jury believed the State's version of the events, returning a verdict of guilty on both counts of second degree assault.
Walden appealed to the Court of Appeals, arguing the trial court erred in submitting jury instruction 18, specifically the second paragraph, because it injects an impermissible objective element into the definition of self-defense and constitutes a comment on the evidence by the court. The Court of Appeals affirmed the verdicts in an unpublished opinion. Walden then petitioned this court for review solely on the issue of the impermissible objective standard created by the second paragraph of instruction 18.
Under the facts of this case, we hold the definition of "great bodily injury" used in instruction 18 could have impermissibly restricted the jury from considering Walden's subjective beliefs about the possible consequence of an assault by the teens. Because the law of self-defense was not made manifestly apparent, i.e., because Walden was forced to argue to the jury regarding the correct legal standard, we reverse Walden's convictions and remand for a new trial.

ANALYSIS
Jury instructions on self-defense must more than adequately convey the law. State v. LeFaber, 128 Wash.2d 896, 900, 913 P.2d 369 (1996). Read as a whole, the jury instructions must make the relevant legal standard manifestly apparent to the average juror. LeFaber, 128 Wash.2d at 900, 913 P.2d 369; State v. Allery, 101 Wash.2d 591, 595, 682 P.2d 312 (1984); State v. Painter, 27 Wash.App. 708, 713, 620 P.2d 1001 (1980), review denied, 95 Wash.2d 1008 (1981). "A jury instruction misstating the law of self-defense amounts to an error of constitutional magnitude and is presumed prejudicial." LeFaber, 128 Wash.2d at 900, 913 P.2d 369.
To be entitled to a jury instruction on self-defense, the defendant must produce some evidence demonstrating self-defense; however, once the defendant produces some evidence, the burden shifts to the prosecution to prove the absence of self-defense beyond a reasonable doubt. See State v. Janes, 121 Wash.2d 220, 237, 850 P.2d 495 (1993) (defendant bears initial burden of producing evidence killing occurred in circumstances amounting to self-defense); State v. Acosta, 101 Wash.2d 612, 619, 683 P.2d 1069 (1984) (State bears burden of disproving self-defense in second degree assault prosecution).
Evidence of self-defense is evaluated "from the standpoint of the reasonably prudent person, knowing all the defendant knows and seeing all the defendant sees." Janes, 121 Wash.2d at 238, 850 P.2d 495 (citing Allery, 101 Wash.2d at 594, 682 P.2d 312). This standard incorporates both objective and subjective elements. The subjective portion requires the jury to stand in the shoes of the defendant and consider all the facts and circumstances known to him or her; the objective portion requires the jury to use this information to determine what a reasonably prudent person similarly situated would have done. Janes, 121 Wash.2d at 238, 850 P.2d 495.
Accordingly, the degree of force used in self-defense is limited to what a reasonably prudent person would find necessary under the conditions as they appeared to the defendant. See State v. Bailey, 22 Wash.App. 646, 650, 591 P.2d 1212 (1979); 13A Royce A. Ferguson, Jr. & Seth Aaron Fine, Washington Practice, Criminal Law § 2604, at 351 (1990). Deadly force may only be used in self-defense if the defendant reasonably believes he or she is threatened with death or "great personal injury." 13A Ferguson, supra § 2604, at 351; RCW 9A.16.050(1); 1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 5.7(b) (1986).[2]
*1240 While the above principles regarding self-defense are well settled in Washington, the application of these principles in the context of the use of deadly force in self-defense against an unarmed assailant is somewhat unsettled. In the case at bar, the first paragraph of instruction 18 adequately conveys the relevant law on the amount of force allowed in self-defense:
One has the right to use force only to the extent of what appears to be the apparent imminent danger at the time. However, when there is no reasonable ground for the person attacked or apparently under attack to believe that his person is in imminent danger of death or great bodily harm, and it appears to him that only an ordinary battery is all that is intended, he has no right to repel a threatened assault by the use of a deadly weapon in a deadly manner.
Clerk's Papers at 37 (emphasis added). The problem lies in the second paragraph of instruction 18's attempt to define "great bodily harm." The second paragraph states: "Great bodily injury[3] as used in this instruction means an injury of a graver and more serious nature than an ordinary battery with a fist or pounding with the hand; it is an injury of such nature as to produce severe pain, suffering and injury." Clerk's Papers at 37 (emphasis added). Walden argues this instruction excludes as a matter of law all ordinary batteries from the definition of [great personal injury] and, therefore, prevents the jury from properly considering the defendant's subjective perception of the battery.
The trial court and the Court of Appeals, relying on State v. Foster, 91 Wash.2d 466, 589 P.2d 789, both found instruction 18's definition of [great personal injury] a correct statement of the law. While our opinion in Foster did address substantially similar language, the proper definition of [great personal injury] was not addressed. Rather, Foster dealt solely with the issue of whether the definition in the instruction was an impermissible comment on the evidence. Foster, 91 Wash.2d at 481, 589 P.2d 789. Noting this court's prior treatment of similar language with approval, the court in Foster held the definition was not an impermissible comment on the evidence. Foster, 91 Wash.2d at 481-82, 589 P.2d 789. Thus, Foster does not answer the question presented in this case.
Whether the definition of [great personal injury] used in the second paragraph of instruction 18 is proper has not been directly addressed by this court.[4] However, the *1241 Court of Appeals in State v. Painter, 27 Wash.App. 708, 620 P.2d 1001, addressed this exact issue. In Painter, the defendant, a frail, small female, shot and killed a larger, stronger but unarmed male who had abused and threatened her on earlier occasions. Painter, 27 Wash.App. at 709-10, 620 P.2d 1001. The jury instructions defined self-defense in accord with WPIC 16.02 and RCW 9A.16.050(1), but went on to define [great personal injury] using the exact same language as used in instruction 18 in this case. Then Court of Appeals Judge Barbara Durham wrote:
The effect of instruction No. 14, however, is completely undermined by the court's definition of [great personal injury] given in instruction No. 15. By instructing the jury that "`[great personal injury]' means an injury of a more serious nature than an ordinary striking with the hands or fists" the trial court ... injected an impermissible objective standard into the instructions....
Painter, 27 Wash.App. at 712, 620 P.2d 1001. The court explained: "It is well within the realm of common experience that `an ordinary striking with the hands or fists' might inflict [great personal injury], depending upon the size, strength, age, and numerous other factors of the individuals involved." Painter, 27 Wash.App. at 713, 620 P.2d 1001; see also 1 LaFave, supra § 5.7(b), at 653.
We agree with the Court of Appeals' holding in Painter and adopt its rationale. Rather than making the subjective standard of self-defense manifestly apparent to the average juror, the definition of [great personal injury] in instruction 18 does the opposite and confuses the standard. Just as in Painter, the correct statement of the law in the first paragraph of instruction 18 is undermined by the definition of [great personal injury] in the second paragraph.
By defining [great personal injury] to exclude ordinary batteries, a reasonable juror could read instruction 18 to prohibit consideration of the defendant's subjective impressions of all the facts and circumstances, i.e., whether the defendant reasonably believed the battery at issue would result in great personal injury. The Supreme Court Committee on Jury Instructions, in response to Painter, adopted this rationale and modified WPIC 2.04.01's definition of great personal injury to read "... an injury that the [defendant] reasonably believed, in light of all the facts and circumstances known at the time, would produce severe pain and suffering if it were inflicted upon either the [defendant] or another person." WPIC 2.04.01 and cmt. WPIC 2.04.01. The definition in WPIC 2.04.01 is the proper definition to use in defining great personal injury in jury instructions on the reasonable use of force in self-defense.
The State argues the jury instructions on self-defense, considered as a whole, allowed Walden to argue his theory of the case despite the inconsistent and erroneous statement of law in instruction 18. Yet, the rule requiring instructions to be considered as a whole does not save the internally inconsistent instruction in this case.
When instructions are inconsistent, it is the duty of the reviewing court to determine whether "the jury was misled as to its function and responsibilities under the law" by that inconsistency.... [W]here such an inconsistency is the result of a clear misstatement of the law, the misstatement must be presumed to have misled the jury in a manner prejudicial to the defendant.
State v. Wanrow, 88 Wash.2d 221, 239, 559 P.2d 548 (1977) (citations omitted).
The definition of [great personal injury] in instruction 18 is a misstatement of the law and, therefore, is presumed prejudicial to the defendant. Thus, Walden is entitled to a new trial unless the error can be declared harmless beyond a reasonable doubt. State v. Caldwell, 94 Wash.2d 614, *1242 618, 618 P.2d 508 (1980). An instructional error is harmless only if it "is an error which is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case." Wanrow, 88 Wash.2d at 237, 559 P.2d 548 (quoting State v. Golladay, 78 Wash.2d 121, 139, 470 P.2d 191 (1970)). Because the definition of [great personal injury] may have affected the final outcome of this case, the error cannot be declared harmless.

CONCLUSION
We hold the definition used in the second paragraph of instruction 18 was a misstatement of the law on the reasonable use of force in self-defense. Because the State has not shown the error was harmless beyond a reasonable doubt, we reverse Walden's convictions and remand for a new trial.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, MADSEN, ALEXANDER and SANDERS, JJ., concur.
TALMADGE, J., dissents.
TALMADGE, Justice (dissenting).
Washington's case law describing self-defense in both objective and subjective terms is not a picture of clarity. With this decision, the majority compounds the confusion for it condones the use of deadly force by a person not in any imminent reasonable fear for his life or of great bodily harm and, indeed, was likely the aggressor in the incident. For these reasons, I respectfully dissent.
Washington case law has established a standard for self-defense that is both objective and subjective in nature. The jury must stand in the shoes of the defendant and consider all of the circumstances known to that defendant. In using such information, however, the jury must determine what a reasonably prudent person in a similar situation would have done. State v. Janes, 121 Wash.2d 220, 238, 850 P.2d 495 (1993). See also State v. LeFaber, 128 Wash.2d 896, 899-900, 913 P.2d 369 (1996); State v. Painter, 27 Wash.App. 708, 711-12, 620 P.2d 1001 (1980), review denied, 95 Wash.2d 1008 (1981). Thus, a self-defense instruction is not always required if the defendant suffered from the delusion that he or she was in peril of life or limb. See State v. Bell, 60 Wash.App. 561, 566-67, 805 P.2d 815, review denied, 116 Wash.2d 1030, 813 P.2d 582 (1991) (a good faith belief that deadly force is necessary is not in itself sufficient to support a self-defense instruction; such belief must be reasonable from an objective standpoint), 116 Wash.2d 1030, 813 P.2d 582 (1991).
The trial court here gave instructions 12 through 17 regarding self-defense, which all concede were correct. In particular, in instruction 12, the trial court advised the jury of the elements of self-defense as follows:
It is a defense to the charge of assault in the second degree that the force used or offered to be used was lawful as defined in this instruction.
The use of or the offer to use force upon or toward the person of another is lawful when used or offered by a person who reasonably believes that he is about to be injured, and when the force is not more than is necessary.
The person using or offering to use the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.
The State has the burden of proving beyond a reasonable doubt that the force used or offered to be used by the defendant was not lawful.
Clerk's Papers at 31. Instruction 18 advised the jury:
One has the right to use force only to the extent of what appears to be the apparent imminent danger at the time. However, when there is no reasonable ground for the person attacked or apparently under attack to believe that his person is in imminent danger of death or great bodily harm, and it appears to him that only an ordinary battery is all that is intended, he has no right to repel a threatened assault by the use of a deadly weapon in a deadly manner.

*1243 Great bodily injury as used in this instruction means injury of a grave or more serious nature than an ordinary battery with a fist or pounding with the hand; it is an injury of such nature as to produce severe pain, suffering and injury.
Clerk's Papers at 37. Defendant Walden complains that instruction 18 is too proscriptive as to when a defendant may perceive he or she is in imminent peril of death or great bodily injury.
The majority acknowledges that instruction 18 is based on a long series of cases, the most recent, State v. Foster, 91 Wash.2d 466, 481, 589 P.2d 789 (1979). See also State v. Bezemer, 169 Wash. 559, 576-77, 14 P.2d 460 (1932); State v. Churchill, 52 Wash. 210, 223-24, 100 P. 309 (1909). The majority, however, does not choose to overrule these cases. The majority does cite to State v. Painter, and State v. Wanrow, 88 Wash.2d 221, 239, 559 P.2d 548 (1977), for the view that the second paragraph of instruction 18 is erroneous. Majority op. at 1241-42. Both Painter and Wanrow, however, are readily distinguishable. In Painter, the defendant, a frail, forty-six year old woman plagued by physical infirmities necessitating the use of a crutch shot and killed a larger, stronger, but unarmed man who had abused and threatened her on earlier occasions. See Painter, 27 Wash.App. at 709-10, 620 P.2d 1001. Similarly, in Wanrow, a slight woman handicapped by a broken leg and requiring the use of a crutch shot a larger man whom she believed had a history of assaults and whom she perceived as imminently threatening. Wanrow, 88 Wash.2d at 226, 559 P.2d 548. Painter and Wanrow represent appropriate exceptions to the general rule governing self-defense expressed in Foster and earlier cases. See Foster, 91 Wash.2d at 479-82, 589 P.2d 789 (upholding instructions quoted at 91 Wash.2d at 479 n. 4, 589 P.2d 789).
In the present case, John Walden was a 23-year-old hay bailer, admittedly strong from his arduous physical labor, who had a history of minor confrontations with the teenagers who were involved in this case. Fisticuffs had taken place between Walden and the teenagers previously, but no deadly force had been involved. Walden, after drinking several beers, became involved in this altercation with the teens. The teenagers were, in fact, unarmed. Unlike Wanrow or Painter, Walden was in no imminent danger of great bodily harm and he was not a frail or slight person or a victim of prior repeated abuse. Rather, he was a strong young man who was alcohol-affected and was reported to be the aggressor in the altercation.[1] Walden never explicitly testified that he feared imminent death or great personal injury which would produce severe pain and suffering for him.[2] Therefore, Walden was not entitled to use of deadly force.[3]
We should again recite the unambiguous rule that deadly force may not be used to repel an unarmed assailant in the absence of a threat of death or great personal injury. See Wayne R. LaFave and Austin W. Scott, Jr., Criminal Law § 5.7(b) at 456 (1986); Royce A. Ferguson and Seth Aaron Fine, 13A Washington Practice, Criminal Law § 2604 at 351 (1990); State v. Griffith, 91 *1244 Wash.2d 572, 577, 589 P.2d 799 (1979) (simple assault or ordinary battery does not justify taking a human life).
The most troublesome aspect of this case, however, is the fact that it is undisputed Walden pulled the knife on his teenaged assailants before any blows had been struck and he was not in any peril of death or great bodily harm. Trial courts are not obliged to give self-defense instructions to aggressors in altercations. Indeed, self-defense is not available to an aggressor. See Brooks, 172 Wash. at 222, 19 P.2d 924 (wounding case); State v. Craig, 82 Wash.2d 777, 783, 514 P.2d 151 (1973) (homicide case); State v. Wilson, 26 Wash.2d 468, 480, 174 P.2d 553 (1946) (homicide case).
The trial court here gave instruction 14, an aggressor instruction. It was appropriate where Walden's testimony conflicted with that of other witnesses regarding who initiated the altercation. Cf. Report of Proceedings at 84, 94, 106-10, 125-30, 153, 198, and 260-61. See WPIC 16.04; see also State v. Davis, 119 Wash.2d 657, 665-66, 835 P.2d 1039 (1992) (aggressor instruction is properly submitted where there is conflicting evidence regarding who provoked the assault); State v. Kidd, 57 Wash.App. 95, 100, 786 P.2d 847, review denied, 115 Wash.2d 1010, 797 P.2d 511 (1990) (aggressor instruction is not favored, but may be given when there is evidence that the defendant provoked the need to act in self-defense). This may have influenced the jury's verdict to convict.
Finally, the mere possibility that the second paragraph of instruction 18 "could" be misconstrued by some jurors (see Majority op. at 1241) does not amount to a misstatement of the law of self-defense. Since we have approved the same language in Foster, Bezemer, and Churchill (and the majority has not overruled these cases), it is difficult to discern how the giving of this instruction in light of the ample and correct instructions on self-defense contained in instructions 12 through 17 to the jury could constitute harmful error. See LeFaber, 128 Wash.2d at 900, 913 P.2d 369 (noting "[j]ury instructions must more than adequately convey the law of self-defense," but also explaining, "[t]he instructions, read as a whole, must make the relevant legal standard `manifestly apparent to the average juror'") (emphasis added).
This Court can provide a great service to the bench, and public by carefully delineating the elements of self-defense in Washington. I fear the tone of the majority opinion here only contributes to the already existing confusion about the self-defense rule in Washington and may lead people to conclude that deadly force may be used in interpersonal altercations when any reasonable person would know there was no imminent peril of death or great bodily injury. The majority's position effectively emphasizes a defendant's subjective perception of the confrontation to the detriment of the objective inquirythe perception of the reasonably prudent person, the other half of the self-defense analysis. Both are necessary for a valid appraisal of a self-defense assertion. See Janes, 121 Wash.2d at 239-40, 850 P.2d 495 (the objective portion of the self-defense inquiry provides a crucial external standard and keeps self-defense firmly rooted in the narrow concept of necessity). If the extent of the threat perceived by a reasonable person, standing in the shoes of the defendant, is no more than an ordinary battery, use of deadly force or weapons should not be condoned.
I would affirm the Court of Appeals and affirm the trial court conviction of John Walden for the two counts of assault in the second degree.
NOTES
[1] Instruction 18 is the last of seven jury instructions on the law of self-defense that were given to the jury. Instructions 12 through 17, respectively, address: (1) the general definition and burdens for self-defense; (2) the definition of necessity; (3) the aggressor exception; (4) withdrawal; (5) mistaken belief of imminent danger; and (6) the duty to retreat.
[2] The parties in this case have limited their arguments to the reasonable use of deadly force in self-defense, as opposed to a threat to use deadly force. One noted commentator recognizes the distinction between the use of deadly force and a threat to use deadly force: "But merely to threaten death or serious bodily harm, without any intention to carry out the threat, is not to use deadly force, so that one may be justified in pointing a gun at his attacker when he would not be justified in pulling the trigger." 1 LaFave, supra § 5.7(a), at 651 (footnote omitted). Because the parties have not raised this issue in their briefs or at oral argument, we do not address it.
[3] We also note the inconsistent use of the terms "great bodily harm" and "great bodily injury" within instruction 18. The Washington Pattern Jury Instructions advocate the use of a third variation on this term: great personal injury. WPIC 2.04.01. Despite the potential confusion inherent in the inconsistent use of these three terms, the issue in this case concerns the definition of the term in the context of self-defense. As recommended by the Supreme Court Committee on Jury Instructions, we advocate using the term "great personal injury," and will do so throughout this opinion. See Comment, WPIC 2.04.01 (because "great bodily harm" is an element of first degree assault and is distinctly defined in that context, it should not be used in instructions on self-defense). See RCW 9A.36.011; RCW 9A.04.110(4)(c). When "great personal injury" is used in place of the other terms as used in their respective sources, the opinion will so indicate by using brackets, e.g., [great personal injury].
[4] While this court has yet to directly address this issue, we have commented favorably on a substantially similar definition in State v. Bezemer, 169 Wash. 559, 576, 14 P.2d 460 (1932) ("`great bodily harm' [means] an injury of a graver and more serious nature than an ordinary battery with the fists or pounding with the hands"). This definition was included in a jury instruction on self-defense. The issue decided by the Bezemer court was whether the trial court erred in failing to give the instruction offered by the defendant. In approving this definition, the court in Bezemer stated that in order to agree with the defendant, it would be "required to hold that a simple assault or an ordinary battery would justify the taking of human life." Bezemer, 169 Wash. at 577, 14 P.2d 460 (quoting State v. Churchill, 52 Wash. 210, 224, 100 P. 309 (1909)). The quote taken from Churchill, however, addressed the defendant's assignment of error that the jury instruction should have used the term "bodily harm" in place of "great bodily harm." See Churchill, 52 Wash. at 223-24, 100 P. 309. The jury instructions at issue in Churchill used the term "great bodily harm" throughout without ever defining the term. See Churchill, 52 Wash. at 218-20, 100 P. 309. The instructions from Churchill are in accord with the first paragraph of instruction 18 here. In fact, one instruction quoted in Churchill states: "However, an assault with the naked fist is sufficient to justify killing in self-defense if there is at the time a reasonably apparent purpose by the assailant to inflict death or great bodily harm upon assailed...." Churchill, 52 Wash. at 219, 100 P. 309. As explained above, the definition of [great personal injury] in the second paragraph of instruction 18 conflicts with the correct statement in the first paragraph of instruction 18, and would have conflicted with this instruction from Churchill. Because the court in Bezemer was mistaken in relying on Churchill for approving its definition of "great bodily harm," we do not find Bezemer controlling on our decision in this case.
[1] See also State v. Brooks, 172 Wash. 221, 222, 19 P.2d 924 (1933), in which the defendant, who wounded with a knife an unarmed man whom defendant alleged was the aggressor, claimed self-defense. The court held "[t]he doctrine of self-defense cannot ordinarily be successfully invoked when a deadly weapon is used to repel a simple assault. Unless there is great disparity in the physical strength or condition of the combatants, the one who uses such weapon himself becomes the aggressor."
[2] Walden testified he went to the arcade to play a few video games. Report of Proceedings at 259. He felt threatened and scared when, on a crowded sidewalk in front of the arcade, he perceived a gang (four teenagers) approaching him to beat him up. Report of Proceedings at 259, 262-63.
[3] See Brooks, 172 Wash. at 222, 19 P.2d 924; see also State v. Pearson, 288 N.C. 34, 43-44, 215 S.E.2d 598 (1975) (defendant who was attacked in parking lot by three men who did not assault him with deadly force was not privileged to use deadly force to repel the attack unless, due to great disparity in strength, size and numbers between him and assailants, he believed, and had reasonable basis for such belief, that he would be subjected to death or great bodily harm if he did not defend himself with deadly force). Cf. Allen v. United States, 157 U.S. 675, 679, 15 S.Ct. 720, 721, 39 L.Ed. 854 (1895), in which the Court indicated the use of deadly force in self-defense may be justified where defendant is attacked by multiple assailants brandishing sticks who had previously threatened to kill defendant. Walden's case is distinguishable.