[Nos. 31266-2-II; 32496-2-II.   Division Two.   February 7, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. LOGAN JUSTICE MARQUEZ, *Appellant*.

*Manek R. Mistry* and *Jodi R. Backlund* (of *Backlund & Mistry*), for appellant.

*Deborah S. Kelly, Prosecuting Attorney*, for respondent.

¶1 HUNT, J. — Logan J. Marquez appeals his jury conviction for second degree assault with a deadly weapon. He argues that the trial court used an unconstitutional combination of jury instructions, which essentially relieved the State of its burden of proof and improperly negated self-defense. The State responds that Marquez both invited and waived this claimed error, which was harmless. We disagree.

¶2 Holding that the self-defense instructions were erroneous under *Rodriguez*[1] and denied Marquez a fair trial, we reverse and remand for a new trial.

## FACTS

### I. THE ASSAULT

¶3 The relevant facts are not in dispute. On April 19, 2003, Logan Marquez, his girl friend Wendy Sampson, and their friends were outside a convenience store in Port Angeles. Brian and Kentra Morseburg arrived by car at the store. Marquez and his friends engaged in a racially-tinged verbal confrontation with the Morsebergs, which turned into a physical fight. The witnesses' accounts differed about who started the fight.

¶4 According to Marquez and his friend Anita Charles, Brian Morseburg[2] punched Sampson twice—once in the face and once knocking her into a car. Before Brian could hit Sampson a third time, Marquez intervened, hitting Brian on the head with a flashlight from behind. Brian fell to the ground, hitting his head on the hard paved surface. Marquez testified that he kicked Brian's legs out of "adrenalin" and "anger" because Brian had beaten his girl friend. Other witnesses testified that both Marquez and Sampson kicked Brian, and, according to at least one witness, Marquez kicked Brian's side and Sampson kicked Brian's head. When the fight ended, Brian lay on the pavement unconscious.

¶5 Brian suffered severe injury to his head, causing physical disability and inability to care for himself fully. His physician, however, could not determine precisely what had caused this severe degree of impairment, stating that being struck on the back of the head, falling to the hard pavement without being able to cushion the fall, and being kicked in

---

[1] *State v. Rodriguez*, 121 Wn. App. 180, 87 P.3d 1201 (2004).

[2] We use the Morseburgs' first names for clarity.

the head, alone, or in combination, could have caused Brian's injuries.

¶6 Sampson's physician testified that two or three days after the altercation, Sampson had bruises on her arms in the shape of handprints and pain in her upper left arm and right shoulder. Her injuries were not life-threatening.

## II. PROCEDURE

¶7 The State charged Marquez with first degree assault with a deadly weapon, a flashlight.

## A. Trial

¶8 The case went to a jury trial. Marquez did not deny hitting Brian with the flashlight or kicking him in the leg one time, but he contended he did so in defense of his girl friend, Sampson, whom Brian was assaulting and injuring.

¶9 On cross examination, the State asked Marquez:

Q: [Regarding the location of your car, t]he police asked the day you were in custody and you refused to tell them and your attorney refused to tell them that day, didn't he?

6 Report of Proceedings (RP) at 51. Marquez objected, asserting that Marquez had exercised his right to remain silent, on which the State could not comment. The trial court sustained Marquez's objection.

¶10 After both parties rested, Marquez asserted that he was entitled to a defense-of-another instruction, arguing that another witness had seen Brian hit Sampson and that there was photographic and medical evidence of her injuries. The State opposed giving such instruction, arguing the evidence was insufficient to show that a reasonable person would have felt justified in using lethal force.[3]

---

[3] The State argues that Marquez

never testified to any concern for his girlfriend's safety much less that he feared a degree of injury that would constitute great personal injury or cause severe pain or suffering. Nor was there any testimony that his girlfriend was

¶11 Ruling that Marquez had presented evidence that Brian was assaulting Sampson, sufficient to support his defense-of-another claim, the trial court granted Marquez's request.[4] The trial court gave the following pertinent jury instructions:

> To convict the Defendant, Logan Justice Marquez, of the crime of ASSAULT IN THE FIRST DEGREE as charged, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 19th day of April, 2003, the Defendant, Logan Justice Marquez assaulted Brian Morseburg;
>
> (2) That the Defendant, Logan Justice Marquez, acted with intent to inflict great bodily harm;
>
> (3) That the assault
>
> > (a) was committed with a deadly weapon or by force or means likely to produce great bodily harm or death; or
> >
> > (b) resulted in the infliction of great bodily harm; and
>
> (4) That the acts occurred in the State of Washington.

Instruction 9, Clerk's Papers (CP) at 63.

> If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime charged, the defendant may be found guilty of any lesser crime the commission of which is necessarily included in the crime charged, if the evidence is sufficient to establish the defendant's guilt of such lesser crime beyond a reasonable doubt.
>
> The crime of assault in the first degree necessarily includes the lesser crimes of assault in the second degree, assault in the third degree and assault in the fourth degree.
>
> . . . .

---

substantially outweighed or smaller than the victim or frail or in danger from the victim's blows.

Br. of Resp't at 10.

[4] The record on appeal does not show whether Marquez proposed any instructions. Even Marquez is equivocal about this point in his brief, arguing, for example, "If defense counsel proposed Instruction 10, then Mr. Marquez was denied the effective assistance of counsel." Assignment of Error 4 (Appellant's Opening Br. at vi); *see also* Assignment of Error 5 (Appellant's Opening Br. at vi).

A person commits the crime of ASSAULT IN THE SECOND DEGREE when under circumstances not amounting to ASSAULT IN THE FIRST DEGREE he intentionally assaults another and thereby recklessly inflicts substantial bodily harm or assaults another with a deadly weapon.

Instructions 14, 15; CP at 68, 69.

Great bodily harm means bodily injury that creates a probability of death, or which causes significant serious permanent disfigurement, or that causes a significant permanent loss or impairment of the function of any bodily part or organ.

Instruction 10; 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.04, at 21 (2d ed. 1994); CP at 64.

A person is entitled to act on appearances in defending another, if that person believes in good faith and on reasonable grounds that another is in actual danger of *great bodily harm*, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful.

Instruction 29; CP at 83 (emphasis added). The trial court did not give an additional instruction defining "great bodily harm" for purposes of "defense of another." Marquez neither objected to the trial court's failure to give such an instruction nor proposed one himself. Thus, the jury received only the definition of "great bodily harm" applicable to proving first degree assault.

¶12 The jury convicted Marquez of the lesser offense, second degree assault while armed with a deadly weapon. The trial court sentenced Marquez to an exceptional sentence of 54 months in prison. The court based this exceptional sentence on Marquez's having caused injury to Brian more serious than typical for second degree assault and on Brian's having been vulnerable because his back was turned toward Marquez when Marquez hit him with the flashlight.

¶13 Marquez appealed.

## B. Appeal

¶14 While Marquez's appeal was pending, the United States Supreme Court issued *Blakely v. Washington*,[5] requiring a jury to decide factual issues underpinning an exceptional sentence. Marquez moved for resentencing in light of *Blakely*. In response, the trial court authorized the impaneling of a new jury to determine whether aggravating factors existed to justify an exceptional sentence. Marquez appealed this special jury authorization, which we consolidated with his first appeal.

¶15 Meanwhile, the Washington Supreme Court ruled that, absent specific legislative authorization, the trial court could not impanel a new jury to consider aggravating sentencing factors under *Blakely*. *State v. Hughes*.[6] As a result of the *Hughes* decision, the trial court did not impanel a sentencing jury and, instead, resentenced Marquez to a standard range sentence of 26 months in prison.

¶16 We now address Marquez's pending appeal of his conviction.

## ANALYSIS

¶17 Marquez argues that the trial court's combined jury instructions on the elements of assault, great bodily harm, and defense of another unconstitutionally misled the jury, resulting in his wrongful conviction. He contends that the trial court gave only a single instruction defining "great bodily harm," an instruction that, although accurately stating the definition for purposes of proving first degree assault, should not also have served as the definition of "great bodily harm" for purposes of the defense-of-another instruction. He contends that the defense-of-another instruction warranted a significantly different definition, one

---

[5] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[6] *State v. Hughes*, 154 Wn.2d 118, 110 P.3d 192 (2005).

that included a lesser degree of his perceived harm.[7] We agree.

## I. Invited Error

■■ ¶18 The State argues that Marquez invited the claimed error by proposing the challenged jury instructions[8] and, therefore, he cannot challenge the instructions on appeal.[9] The State is correct that generally a defendant may not request jury instructions and then complain on appeal that they were reversible error. *Rodriguez*, 121 Wn. App. at 184 (citing *State v. Aho*, 137 Wn.2d 736, 744-45, 975 P.2d 512 (1999)).

---

[7] Marquez raises four additional issues in this appeal: (1) ineffective assistance of counsel, (2) violation of his constitutional right to remain silent when the State cross-examined him about his refusal to tell police about the location of his car, (3) his exceptionally long prison sentence, and (4) the trial court's impaneling a separate sentencing jury.

Because we reverse based on the erroneous instructions, we need not address the first two issues, ineffective assistance of counsel or the comment on Marquez's right to remain silent. Nor need we address the third and fourth issues, which are moot: the original exceptional sentence and the trial court's abandoned intent to impanel a sentencing jury to consider aggravating sentencing factors.

[8] At trial, the State initially argued against giving a self-defense instruction because there were no facts to justify Marquez's "lethal force." Marquez responded that "lethal force" was not relevant where Marquez was charged with inflicting only "great bodily harm," not with using "deadly force." 6 RP at 63. Marquez also noted, "[T]the State is perfectly free to argue that the force was great and thereby negates the defense of others." 6 RP at 64. As anticipated, the State later argued that "when there is no reasonable ground for a person attacked or apparently under attack to believe that this person is in imminent danger of death or great bodily harm . . . he has no right to repel a threatened assault by the use of a deadly weapon in a deadly manner." 6 RP at 67.

The trial court discussed with counsel the standard for defense of another. It even noted that one "normal self defense instruction requires only that someone lawfully aiding a person who he reasonably believes is about to be injured in preventing or attempting to prevent [an] offense against the person" in the context of whether there was sufficient evidence of self-defense, or defense of another, to send the issue to the jury. 6 RP at 64-65. But no one articulated different meanings of "great bodily harm" for purposes of proving assault and establishing defense of another. Nor does the record show that Marquez challenged the trial court's definition of "great bodily harm" in its instructions to the jury.

[9] The State acknowledges that because Marquez's jury instruction challenge involves a "manifest error affecting a constitutional right," he can raise it for the first time on appeal under RAP 2.5(a)(3), even though he failed to object below.

¶19 The record before us on appeal, however, does not conclusively establish that Marquez proposed the erroneous jury instructions.[10] The clerk's papers do not contain Marquez's proposed instructions. On the contrary, the record shows only that the trial court stated, "These are *my* proposed instructions." 6 RP at 74 (emphasis added).

¶20 Accordingly, based on this record, we cannot preclude Marquez from challenging the instructions on grounds of invited error.

## II. Jury Instructions on Defense of Another

¶21 The law allows defense of another person against a less-than-life-threatening assault, so long as the degree of force the defendant uses is limited to what a reasonably prudent person would find *necessary under the conditions as they appeared to that defendant. See State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997); *Rodriguez*, 121 Wn. App. at 186. Marquez argues that the trial court's instructions here not only failed to state this appropriate legal standard but also misled the jury to apply an erroneous legal standard that wrongfully increased the likelihood of his conviction. We agree.

### A. Standard of Review

¶22 Jury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and inform the jury of the applicable law when read as a whole. *Rodriguez*, 121 Wn. App. at 184-85. Jury instructions on defense of another "must more than adequately convey the law." *Walden*, 131 Wn.2d at 473. And jury instructions read as a whole must make the relevant legal standards manifestly apparent to the average juror, *Walden*, 131 Wn.2d at 473, especially with respect to the legal parameters applicable to defense of

---

[10] The State acknowledges that the record is unclear whether the defendant proposed the defective instructions.

another. A jury instruction misstating the law of self-defense is an error of constitutional magnitude, which we presume to be prejudicial. *Walden*, 131 Wn.2d at 473.

B. Defense of Another in Danger of "Great Bodily Injury"

■ ■ ¶23 In *Rodriguez*, Division Three of this court addressed the error arising from a similar combination of jury instructions. In the context of first degree assault, the *Rodriguez* trial court similarly defined "great bodily harm" to mean " 'probability of death, or which causes significant serious permanent disfigurement . . . .' " *Rodriguez*, 121 Wn. App. at 188. As here, the *Rodriguez* trial court did not give a separate instruction accurately defining "great bodily harm" for purposes of establishing self defense. *Rodriguez*, 121 Wn. App. at 186. Reversing Rodriguez's conviction, Division Three reasoned,

> "By *defining* [great bodily injury] *to exclude ordinary batteries*, a reasonable juror could read [the instruction] to prohibit consideration of the defendant's subjective impressions of all the facts and circumstances, i.e., *whether the defendant reasonably believed the battery at issue would result in great personal injury.*"

*Rodriguez*, 121 Wn. App. at 186 (emphasis added) (alterations in original) (quoting *Walden*, 131 Wn.2d at 477).

¶24 As in *Rodriguez*, the trial court here similarly instructed the jury by defining "great bodily harm" only in the context of first degree assault, without redefining it in the context of defense of another. As a result, the combined instructions, especially in the absence of a separate "great bodily harm" instruction specifically tailored to defense of another, improperly increased the likelihood of Marquez's conviction: The instructions likely could have misled the jury to believe that Marquez was justified in defending Sampson *only* if he reasonably believed she was *in danger of being killed or would have suffered from serious permanent disfigurement or impairment*. Limiting justifiable de-

fense to repel only such life- or disfigurement-threatening assaults is an incorrect statement of the law. As the State conceded at oral argument, these instructions were erroneous under *Rodriguez*.

¶25 As in *Rodriguez*, the trial court here defined great bodily injury to exclude less serious assaults. Without a separate "great bodily injury" definition for self-defense, this exclusion could have caused a reasonable juror to interpret the defense-of-another instruction as prohibiting consideration of Marquez's subjective impressions of all the facts and circumstances, i.e., whether Marquez reasonably believed Brian's assault of Sampson would result in great personal injury to her. *Rodriguez*, 121 Wn. App. at 186. In contrast, a correct statement of the law is that the degree of force used in self defense is limited to what a reasonably prudent person would find necessary under the conditions *as they appeared to the defendant*. *Walden*, 131 Wn.2d at 474.

¶26 Accordingly, we accept the State's concession at oral argument that *Rodriguez* correctly states the law, adopt and apply *Rodriguez*, and hold that the instructions prejudicially misstated the law on defense of another.

### III. HARMLESS ERROR

¶27 Nonetheless, the State argues that the trial court's instructional error was harmless. The State contends that Marquez was not entitled to a defense-of-another instruction because (1) Marquez did not testify that he feared for his girl friend's safety and (2) he did not reasonably believe that she was in danger when he kicked Brian after Brian fell to the ground.

¶28 The State is correct in that a trial court need not instruct the jury on self-defense or defense of another if no reasonable person in the defendant's shoes could have perceived a threat of great personal injury. *State v. Walker*, 136 Wn.2d 767, 773, 966 P.2d 883 (1998); *see Walden*, 131 Wn.2d at 475 n.3. Before reaching such conclusion, how-

ever, the trial court must determine whether the defendant produced any evidence to support his claim that he subjectively believed in good faith that another person was in imminent danger of great bodily harm and that this belief, viewed objectively, was reasonable. *State v. Read,* 147 Wn.2d 238, 243, 53 P.3d 26 (2002).

¶29 The defendant has the initial burden to produce some evidence of self-defense or defense of another to be entitled to a corresponding jury instruction. The burden then shifts to the State to prove the absence of self-defense or defense of another beyond a reasonable doubt. *Walden,* 131 Wn.2d at 473.

¶30 Here, the trial court properly determined that Marquez was entitled to a jury instruction on defense of another based on evidence that Brian was assaulting Sampson and Marquez came to her aid. Marquez testified that he was in shock when he witnessed Brian punching his girl friend, Sampson, and that he (Marquez) took action when he realized that someone had to stop Brian from continuing his assault. Based on these facts, a reasonable person could have determined that Marquez subjectively believed Sampson was in imminent danger of being seriously injured. Moreover, a reasonable person could also have determined that Marquez objectively held this belief: Marquez watched a stranger, Brian, assault Sampson, a fact that another witness corroborated. The assault was so forceful that it left hand-shaped bruises on Sampson's arms and caused arm and shoulder pain.

¶31 Whether Marquez used excessive force and whether his belief that Sampson was in danger of great bodily harm was reasonable and credible are matters for the jury to decide. *Read, supra.* But as a result of the erroneous instructions here, the jury did not have the chance to decide this critical issue. Instead, the State faced an impermissibly lower burden in disproving that Marquez was lawfully defending another person when he attacked Brian in defense of Sampson: The State was able to defeat Marquez's claim of defense of another by arguing that he did not

reasonably believe that Brian's punching Sampson placed her in danger of being killed or seriously and permanently disfigured or impaired. The trial court's instructions could, therefore, have caused the jury to misinterpret and to misapply the law of self-defense by applying this higher standard that the State argued and, thus, wrongfully to convict Marquez.

¶32 As our Supreme Court has held, such error is presumptively prejudicial. *Walden,* 131 Wn.2d. at 473 (a jury instruction that misstates the law of self-defense amounts to an error of constitutional magnitude and is presumed prejudicial). We hold, therefore, that the trial court properly determined that Marquez was entitled to a defense-of-another instruction, and we reject the State's argument that the erroneous instructions the court gave were harmless.

¶33 Reversed and remanded for a new trial.

VAN DEREN, A.C.J., and HOUGHTON, J., concur.