# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                        Respondent,<br><br>    v.<br><br>JASMINE C. YOUNG-HOTCHKISS,<br><br>                        Appellant. | No.  49282-2-II<br><br>UNPUBLISHED OPINION |

BJORGEN, J. — Jasmine Young-Hotchkiss appeals from her adjudication of guilt of fourth degree assault.  She argues that (1) the juvenile court erred in analyzing her self-defense claim with reference to RCW 9A.16.100, Washington's parental discipline statute, (2) the State failed to prove the absence of self-defense, and (3) sufficient evidence does not support the juvenile court's finding that her mother used minimal force to correct her behavior.

We hold the juvenile court did not err through its references to the parental discipline statute and that it did not hold that the parental discipline statute precluded Young-Hotchkiss' claim of self-defense.  We also hold that Young-Hotchkiss did not present sufficient evidence to raise a self-defense claim and that sufficient evidence supports the juvenile court's finding

regarding the use of force by Young-Hotchkiss' mother.

Accordingly, we affirm.

FACTS

On April 24, 2016, Young-Hotchkiss was 13 years old and living with her mother. At the time of the incident, Young-Hotchkiss was about five feet six inches tall and weighed 169 pounds, while her mother was about five feet eight inches tall and weighed 230 pounds. Young-Hotchkiss and her mother began arguing over Young-Hotchkiss' use of a cell phone. Young-Hotchkiss went to her room to hide her phone, and her mother followed her to her room. According to Young-Hotchkiss, her mother was yelling at her while Young-Hotchkiss was in her room. Young-Hotchkiss left her room, went back downstairs to the kitchen, hid her phone again, and sat down on the floor with her back against a wall. Young-Hotchkiss' mother followed her into the kitchen and the two continued to argue.

Young-Hotchkiss' mother told her to go to her room or she would take her there. When Young-Hotchkiss refused to move, her mother grabbed her by the sweatshirt hood. Young-Hotchkiss testified that when her mother grabbed her sweatshirt hood, it made it difficult for her to breathe and it hurt her armpit because the sweatshirt was completely zipped up. Young-Hotchkiss told her mother to get off of her, then she unzipped and removed herself from her sweatshirt, and sat down in the kitchen again. Young-Hotchkiss testified that when she sat down she was scared because she had "seen her [mother] angry before and I could tell [by] her face that she was angry." Verbatim Report of Proceedings (VRP) at 69. As Young-Hotchkiss' mother leaned toward her and stretched out her arm, Young-Hotchkiss kicked her mother in the leg. Young-Hotchkiss' mother called the police, and Young-Hotchkiss locked herself in a

bathroom. Young-Hotchkiss stated that her mother's attempt to pull her by her sweatshirt hood had left four red marks on the inside of her upper right arm.

Officer Larry Gabor arrived in response to Young-Hotchkiss' mother's call to the police. Officer Gabor spoke with both Young-Hotchkiss and her mother. Officer Gabor described Young-Hotchkiss' injuries at trial:

> [Gabor]: I asked [Young-Hotchkiss] about injuries, and she pulled up her sleeve and showed me her arm where she was grabbed, and I could see a very slight pink mark on the inside of her upper right arm.
>
> [Prosecution (P)]: Okay. Did you document that injury in any way?
>
> [Gabor]: Just in my report.
>
> [P]: Did you photograph it?
>
> [Gabor]: No.
>
> [P]: Why not?
>
> [Gabor]: It was very slight, and I wasn't sure it was [going to] show up. It was barely visible.
>
> [P]: Okay. Did the respondent ask for medical assistance for her injuries?
>
> [Gabor]: No.
>
> [P]: Did you feel medical assistance would be necessary based on your training and experience?
>
> [Gabor]: No.

VRP at 22-23.

Officer Gabor also examined Young-Hotchkiss' mother's leg and did not observe any injury.

On April 26, 2016, the State charged Young-Hotchkiss with fourth degree assault. On July 7, the juvenile court found that the State had proved the absence of self-defense and that Young-Hotchkiss was guilty of fourth degree assault. As part of its oral ruling, the juvenile court explained that:

> There has been no evidence other than the pulling of the sweatshirt to raise a reasonable basis for fear of infliction of serious force against [Young-Hotchkiss]. What apparently she was concerned about was [her mother] continuing to try to force her to go to her bedroom. She attempted to do that by pulling on her sweatshirt. When the sweatshirt was removed, [her mother] was probably going to come back and maybe grab her by the arm and try to make her go to her room. So I don't see that there was a reasonable basis or even that I can find that subjectively [Young-Hotchkiss] believed she was going to be hurt sufficient to raise the self-defense defense to an assault.

VRP at 106.

The juvenile court entered the following findings of fact and conclusions of law:

I. Findings of Fact

. . . .

1.7 At some point, [Young-Hotchkiss' mother] grabbed [Young-Hotchkiss'] sweatshirt in order to try and get [Young-Hotchkiss] to move in the direction of her bedroom.

1.8 [Young-Hotchkiss] continued to resist [her mother], unzipped her sweatshirt, and allowed it to be pulled off of her. During this process, some marks were left on [Young-Hotchkiss].

. . . .

1.12 [Young-Hotchkiss' mother] used a fairly minimal amount of force to try and correct [Young-Hotchkiss'] behavior.

1.13 [Young-Hotchkiss' mother's] pulling on [Young-Hotchkiss'] sweatshirt was not a reasonable basis or even subjectively a reason for [Young-Hotchkiss] to believe she was going to be hurt or injured by [her mother].

1.14 To determine whether there was a defense to [Young-Hotchkiss'] use of force, the Court reviews the Parental Discipline statute, RCW 9A.16.100.

1.15    The marks testified to by Officer Gabor were minor and temporary. Even if the marks resulted in a bruise, it was still a temporary mark.

. . . .

## II. Conclusions of Law

. . . .

2.4    The Parental Discipline statute under RCW 9A.16.100 permits the physical discipline of children when it is reasonable and moderate and is inflicted by a parent for purposes of restraining or correcting a child;

2.5    The force used by [Young-Hotchkiss' mother] was clearly within the Parental Discipline statute. [Young-Hotchkiss' mother's] minimal force was reasonable and moderate discipline contemplated and allowed for by the statute.

2.6    RCW 9A.16.020 states in pertinent part, "The use, attempt, or offer to use force upon or toward the person of another is not unlawful in the following cases, . . . (3) Whenever used by a party about to be injured . . . in preventing or attempting to prevent an offense against his or her person."

2.7    The State proved the absence of self-defense.

Clerk's Papers (CP) at 33-34.

Young-Hotchkiss appeals her adjudication of guilt of fourth degree assault.

## ANALYSIS

### I. SELF-DEFENSE

A.    Legal Principles and Standards of Review

Under RCW 9A.36.041, "[a] person is guilty of assault in the fourth degree if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another." Fourth degree assault includes the intentional harmful or offensive touching of another person regardless of whether it results in physical injury. *State v. Tyler*, 138 Wn. App. 120, 130, 155 P.3d 1002 (2007).

Self-defense is an affirmative defense to an assault charge because self-defense negates the intent element of assault. *State v. McCullum*, 98 Wn.2d 484, 495, 656 P.2d 1064 (1983). RCW 9A.16.020(3) states,

> The use, attempt, or offer to use force upon or toward the person of another is not unlawful in the following cases:
> . . . .
> (3) Whenever used by a party about to be injured, . . . in preventing or attempting to prevent an offense against his or her person, . . . in case the force is not more than is necessary.

To raise a self-defense claim, a juvenile defendant must present some evidence showing that she had a good faith belief that she was about to be injured and that the belief was objectively reasonable. *State v. Graves*, 97 Wn. App. 55, 62, 982 P.2d 627 (1999). If the juvenile makes this showing, the burden shifts to the State to prove the absence of self-defense beyond a reasonable doubt. *State v. Miller*, 89 Wn. App. 364, 368, 949 P.2d 821 (1997).

Whether a juvenile defendant may raise a self-defense argument turns on both objective and subjective components. *State v. Walden*, 131 Wn.2d 469, 474, 932 P.2d 1237 (1997). In the subjective component, the juvenile court must place itself in the juvenile defendant's position and view the juvenile's acts in light of all the facts and circumstances the juvenile knew when the act occurred. *Id*. at 474. In the objective component, the juvenile court must determine what a reasonable person would have done if placed in the juvenile defendant's situation. *Id*.

We use different standards of review when considering different challenges to the juvenile court's determination that a juvenile defendant has not presented enough evidence to raise self-defense. *State v. Read*, 147 Wn.2d 238, 243, 53 P.3d 26 (2002). If the juvenile court

refused to consider a self-defense claim because it found that the juvenile had not presented evidence of her subjective belief of imminent danger of injury, we review that determination for an abuse of discretion as an issue of fact. *Id*. at 243. If the juvenile court refused to consider a self-defense claim because it determined that no reasonable person would have acted similarly to the juvenile defendant, we review that determination de novo as a question of law. *Id*.

A trial court abuses its discretion if its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). A decision is based on untenable grounds or made for untenable reasons if, respectively, it rests on facts unsupported by the record or was reached by applying the wrong legal standard. *Id*. A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, reaches an outcome that is outside the range of acceptable choices, such that no reasonable person could arrive at that outcome. *Id*.

We review a challenge to the sufficiency of the evidence supporting an adjudication of guilt in a juvenile proceeding to determine whether substantial evidence supports the juvenile court's findings and whether the findings support the conclusions of law. *State v. K.H.-H.*, 188 Wn. App. 413, 417-18, 353 P.3d 661 (2015), *aff'd*, 185 Wn.2d 745 (2016). We review conclusions of law de novo. *State v. B.J.S.*, 140 Wn. App. 91, 97, 169 P.3d 34 (2007). As part of this inquiry, we view the evidence in the light most favorable to the State and defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *K.H.-H.*, 188 Wn. App. at 418. We consider unchallenged findings of fact as verities on appeal. *B.J.S.*, 140 Wn. App. at 97.

B.       Parental Discipline Statute

Young-Hotchkiss argues that the juvenile court erred in analyzing her self-defense claim

with reference to RCW 9A.16.100, Washington's Parental Discipline statute.  However, at trial

neither Young-Hotchkiss nor the State argued that the Parental Discipline statute precluded

Young-Hotchkiss from raising self-defense.  Although the juvenile court addressed the merits of

the Parental Discipline statute sua sponte, we do not read the court's findings of fact, conclusions

of law, and oral ruling to hold the Parental Discipline statute precluded the self-defense

argument.  Instead, based on the juvenile court's oral ruling, the argument the parties made to the

juvenile court, and conclusion of law 2.7, we read its ruling to be one on the merits that Young-

Hotchkiss did not act in self-defense.  Accordingly, the juvenile court did not err through its

references to the Parental Discipline statute, and we proceed to an analysis of self-defense under

the principles set out above.

C.       Absence of Self-Defense

Young-Hotchkiss argues that the State did not present sufficient evidence to support the

juvenile court's finding of fact 13 that she lacked a subjective and objective basis for self-

defense.  We disagree.

Young-Hotchkiss relies on *Graves* to support her contention that the State failed to

present sufficient evidence to disprove self-defense. 97 Wn. App. 55.  In *Graves*, a juvenile was

convicted of assaulting his father during a fight over chores. 97 Wn. App. at 57.  He testified

that his father came into his room angrily and that he was afraid his father "was going to do

something." *Id*. at 62.  His father grabbed his chin and pushed his face, telling him, "You are a

punk." *Id*. at 58.  At one point, his father got on top of him and placed him in a headlock. *Id*.

at 62. He wrestled with his father and grabbed at his waist to resist. *Id*. at 60. The court convicted him of assaulting his father after concluding that he had no right to self-defense because his father was entitled to use reasonable force to discipline him. *Id*. at 61. On appeal, Division One of our court rejected this conclusion, noting, "[T]he State has provided no authority for the position that a juvenile defendant is altogether precluded from raising self-defense where the parent admits use of force but claims parental discipline." *Id*. at 63. Based on its record, Division One held that the State failed to show the absence of self-defense. *Id*. at 63.

The present appeal is distinguishable from *Graves.* Here, the evidence indicates that as Young-Hotchkiss' mother leaned toward Young-Hotchkiss and stretched out her arm, Young-Hotchkiss kicked her mother in the leg. In its oral ruling, the juvenile court explained that:

> There has been no evidence other than the pulling of the sweatshirt to raise a reasonable basis for fear of infliction of serious force against [Young-Hotchkiss]. What apparently she was concerned about was [her mother] continuing to try to force her to go to her bedroom. She attempted to do that by pulling on her sweatshirt. When the sweatshirt was removed, [her mother] was probably going to come back and maybe grab her by the arm and try to make her go to her room. So I don't see that there was a reasonable basis or even that I can find that subjectively [Young-Hotchkiss] believed she was going to be hurt sufficient to raise the self-defense defense to an assault.

VRP at 106. In its findings of fact and conclusions of law, the court found that "[Young-Hotchkiss' mother's] pulling on [Young-Hotchkiss'] sweatshirt was not a reasonable basis or even subjectively a reason for [Young-Hotchkiss] to believe she was going to be hurt or injured by [her mother]." CP at 33. In addition, Officer Gabor testified that he observed "a very slight pink mark on the inside of her upper right arm," and he did not photograph it because "[i]t was very slight, and I wasn't sure it was [going to] show up. It was barely visible." VRP at 22-23.

Following *Walden*, 131 Wn.2d at 474, and viewing Young-Hotchkiss' acts in light of all the facts and circumstances she knew at the time, the evidence does not support the proposition that it would be objectively reasonable for someone in Young-Hotchkiss' position to believe that she was about to be injured. Young-Hotchkiss disobeyed her mother's repeated requests to go to her bedroom. After her mother attempted to use minimal force to escort her to her room, she told her mother to get off of her, unzipped and removed her sweatshirt, and sat down in the kitchen. Subjectively, if Young-Hotchkiss truly believed injury was imminent, she would not have disobediently sat down in the kitchen; she would have attempted to avoid the injury by going to her room. Moreover, a reasonably prudent person similarly situated would have obeyed his or her parent and gone to their room in these circumstances without prompting or partaking in a physical altercation.

Young-Hotchkiss did not present evidence showing that she had a good faith belief that she was about to be injured and that the belief was objectively reasonable, as required by *Graves*, 97 Wn. App. at 61-62. Thus, the juvenile court did not err in its finding of fact 1.13 that Young-Hotchkiss lacked a subjective and objective basis for self-defense.

D.    Challenge to Young-Hotchkiss' Mother's Use of Force

Young-Hotchkiss also challenges finding of fact 1.12, arguing that the juvenile court erred by finding that her mother used "a fairly minimal amount of force to try and correct [Young-Hotchkiss'] behavior." Br. of Appellant at 27; Suppl. CP at 33. We disagree.

As discussed above, we review findings of fact in juvenile adjudications to determine if they are supported by substantial evidence. *K.H.-H.*, 188 Wn. App. at 417-18. We view the evidence in the light most favorable to the State and defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *K.H.-H.*, 188

10

Wn. App. at 418. At trial, Officer Gabor testified that the only injuries he observed on Young-Hotchkiss were slight pink marks on the inside of her upper arm and that the marks were barely visible. These observations directly support that Young-Hotchkiss' mother used a fairly minimal amount of force in correcting Young-Hotchkiss' behavior. Therefore, we conclude that substantial evidence supports finding of fact 1.12.

## CONCLUSION

We affirm Young-Hotchkiss' conviction for fourth degree assault.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, J.

We concur:

Johanson, P.J.

Sutton, J.