90 P.3d 1133 (2004)
STATE of Washington, Respondent,
v.
Rodney J. HARRIS, Appellant.
No. 27057-9-II.
Court of Appeals of Washington, Division 2.
May 25, 2004.
*1135 Suzan L. Clark, Attorney at Law, Vancouver, WA, for Appellant.
Richard Alan Melnick, Attorney at Law, Vancouver, WA, for Respondent.
*1134 ARMSTRONG, J.
Rodney Harris appeals his convictions for second degree felony murder and first degree unlawful possession of a firearm, arguing primarily that his counsel was ineffective for proposing an improper self-defense instruction. We agree and, therefore, reverse and remand for a new trial on the homicide charge.

FACTS
In late June and early July 2000, Rodney Harris was staying with Janice Stewart at her apartment in Vancouver, Washington. Stewart's two daughters, their father Donald Smith, and an elderly man named Jake Toller also lived at the apartment.
Harris went to the apartment after arguing with his girlfriend about his cocaine use. There he smoked cocaine continuously and went without sleep. Stewart admitted using crack cocaine with Harris on the day of the shooting. She testified that Harris acted paranoid when he used cocaine, appearing to hear and see things that were not there.
Shortly after he arrived at the apartment, Harris purchased cocaine from Steve, a neighbor. Early the next morning, Harris witnessed an argument between Steve, Stewart, and Smith over a debt Stewart owed. During this argument, Harris stopped Smith from hitting Steve over the head with a two-by-four. Harris also testified that Stewart raised a butcher's knife at Steve during the argument.
On the evening of July 1, Norris Deon Preston visited the apartment. After he arrived, Preston and Stewart went into Stewart's bedroom where they drank whiskey and folded clothes. Harris was in the dining room; Smith and his daughters were out on the patio setting off fireworks.
After shooting off the fireworks, Smith entered the apartment, sat down at the table, and started talking with Preston when he came out from the bedroom. Harris was sitting in a chair in the front room. According to Smith, Preston got up and started walking back toward the bedroom. Harris then got up and shot Preston three times from about twelve feet away.
According to Harris, when Preston exited the bedroom, Preston and Smith went out to the back porch and began talking and looking toward him. Harris heard Smith and Preston say "it's time for a beat-down." IX-A Report of Proceedings (RP) at 538.[1] Harris dialed 911 but hung up when Smith re-entered the apartment. Harris testified that he shot Preston out of fear after he heard Preston tell Smith, "It's time. Let's do this." IX-A RP at 542. Harris claimed Preston and Smith were approaching him and he saw Smith reach for the stick he had used against Steve.
The State charged Harris with one count of second degree murder with a firearm enhancement or, in the alternative, second degree felony murder, charging second degree assault as the predicate crime, and one count of first degree unlawful possession of a firearm. On January 11, 2001, a jury convicted Harris of first degree unlawful possession of a firearm but it could not reach a verdict on the second degree murder charge. Accordingly, the court declared a mistrial on count one.
The State then filed an information charging Harris with one count of second degree felony murder with a firearm enhancement, charging second degree assault as the predicate crime. A jury convicted Harris of second degree felony murder with a firearm enhancement.

*1136 ANALYSIS

I. Ineffective Assistance of Counsel
Harris faults his attorney for (1) failing to except to the trial court's failure to give his proposed voluntary intoxication instruction, and (2) proposing a self-defense instruction based on WPIC 16.02 that instructed the jury Harris had to believe "the person slain intended to inflict death or great personal injury." 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL § 16.02 (2d ed.1994); App. Br. at 13-14.
To establish that counsel was ineffective, Harris must show (1) counsel's performance was deficient; and (2) the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987). Counsel is ineffective if his representation falls below an objective standard of reasonableness. State v. Stenson, 132 Wash.2d 668, 705, 940 P.2d 1239 (1997). A defendant is prejudiced if there is a reasonable probability that but for the deficient performance, the outcome would have been different. In re Pers. Restraint Petition of Pirtle, 136 Wash.2d 467, 487, 965 P.2d 593 (1998). We presume counsel was effective. Strickland, 466 U.S. at 689, 104 S.Ct. 2052; State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995).
A. Refusal to Give Voluntary Intoxication Instruction
Harris argues that his trial attorney should have excepted to the trial court's refusal to give his proposed voluntary intoxication instruction.
A criminal defendant is entitled to a voluntary intoxication instruction if: (1) one of the elements of the crime charged is a particular mental state; (2) there is substantial evidence of ingesting an intoxicant; and (3) the defendant presents evidence that this activity affected his ability to acquire the required mental state. State v. Everybodytalksabout, 145 Wash.2d 456, 479, 39 P.3d 294 (2002).
In Everybodytalksabout, the State charged first and second degree murder, and there was evidence the defendant had been drinking at the time of the crime. But the court concluded that a voluntary intoxication instruction was not warranted because, although the first two elements were met, the defendant had not presented sufficient evidence that his intoxication affected his ability to acquire the required mental state. Everybodytalksabout, 145 Wash.2d at 460, 479, 39 P.3d 294.
The first two elements are met here. Second degree assault requires an intentional act, and Harris had been ingesting crack cocaine. But Harris's own testimony demonstrates that he intended to shoot Preston in self-defense. For example, Harris testified that "I could see Donald reaching for the stick, and that's when I, just out of fear, I stood up and fired the gun at [Preston]." IX-A RP at 542. In response to the prosecutor's questions, "So you shot an unarmed man and you knew you shot an unarmed man; correct?" and, "[Y]ou meant to shoot him[,]" Harris responded "yes," and that he had done so out of self defense. IX-A RP at 569, 574. Because Harris did not present evidence that his crack cocaine smoking prevented him from acquiring the required mental state, his trial counsel was not ineffective for failing to except to the trial court's refusal to give his voluntary intoxication instruction.
B. Defendant's Proposed Self-Defense Instruction
Harris next argues that the trial court erred when it gave a self-defense instruction based on Washington Pattern Jury Instruction (WPIC) 16.02 instead of WPIC 17.02 and that his counsel was ineffective for failing to object to it. Harris reasons that "[t]rial counsel let the jury be instructed that Harris had to believe that Preston was about to `inflict death or great personal injury' under WPIC 16.02, instead of Harris simply believing he was about to be injured as required under WPIC 17.02." App. Br. at 17. Critical to Harris's argument is the portion of the self-defense instruction instructing the jury that Harris had to have "reasonably *1137 believed that the person slain intended to inflict death or great personal injury." Clerk's Papers (CP) at 216 (emphasis added).
A jury instruction that misstates the law of self-defense is constitutional error and presumed to be prejudicial. State v. LeFaber, 128 Wash.2d 896, 900, 913 P.2d 369 (1996). The usual test for the sufficiency of jury instructions is whether "it correctly states the law, is not misleading, and permits counsel to argue his theory of the case." State v. Mark, 94 Wash.2d 520, 526, 618 P.2d 73 (1980) (citing State v. Dana, 73 Wash.2d 533, 439 P.2d 403 (1968)). But the standard for clarity in jury instructions is higher than that for a statute because although courts may use statutory construction, juries lack these same interpretive tools. LeFaber, 128 Wash.2d at 902, 913 P.2d 369. Accordingly, the instructions must be "manifestly clear." LeFaber, 128 Wash.2d at 902, 913 P.2d 369. If self-defense instructions are at issue, the instructions, read as a whole, must make the relevant legal standard manifestly apparent to the average juror. State v. Irons, 101 Wash.App. 544, 550, 4 P.3d 174 (2000).
In Irons, the defendant was convicted of first degree manslaughter following a confrontation in which he was surrounded by four men, three of whom intended to assist the victim. The victim had punched the defendant in the face and another had threatened him with a beer bottle. Irons, 101 Wash.App. at 547-48, 552, 4 P.3d 174. The trial court gave a self-defense instruction based on WPIC 16.02, nearly identical to the instruction here. See Irons, 101 Wash.App. at 550-51, 4 P.3d 174. The instruction informed the jury that the defendant had to reasonably believe the victim intended to inflict death or great personal injury. See Irons, 101 Wash.App. at 550, 4 P.3d 174. Here, the instructions used the phrase "the person slain." CP at 216.
Division One held that WPIC 16.02 and 16.07 (also given in this case), under the facts of the case, inadequately conveyed the law of self-defense because they did not make it manifestly clear that the jury could consider that Irons faced multiple assailants. Irons, 101 Wash.App. at 552-53, 4 P.3d 174. The court reasoned that the portions of the instruction telling the jury (1) to take into consideration all the facts and circumstances as they appeared to Irons and (2) that Irons was entitled to defend himself if he reasonably and in good faith believed he was in actual danger were inconsistent and ambiguous when read with the portion of the instruction informing the jury that Irons had to reasonably believe the victim intended to inflict death or great bodily harm. Irons, 101 Wash.App. at 552-53, 4 P.3d 174. The court concluded:
Although the instruction allowed Irons to argue his theory of the case, it left him with the burden of overcoming the inconsistency between the instruction as written and his theory that he reasonably believed he was in imminent danger of death or great personal injury from multiple assailantsnot just [the victim].
Irons, 101 Wash.App. at 559, 4 P.3d 174.
Here, the instructions required that Harris "reasonably believe [ ] that the person slain intended to inflict death or great personal injury," and informed the jury to consider "all of the facts and circumstances as they appeared to [Harris] at the time of the incident." CP at 216. Harris testified that he feared an attack from Smith and Preston, a theory his counsel also advanced during closing argument. We agree with Irons. This language places the burden on Harris to overcome the inconsistency between the instruction and Harris's theory, that he was in imminent danger from two assailants, not just the victim. Moreover, the error was prejudicial because it went to the core of Harris's defense: he shot because he feared an imminent assault from Preston and Smith. We reverse the murder conviction and remand for a new trial.[2]

II. Exclusion of Dr. Muscatel's Testimony
We address one further issue because it may arise on retrial. Harris argues *1138 that the trial court erred when it granted the State's motion in limine to exclude Dr. Kenneth Muscatel's testimony regarding diminished capacity. Harris maintains that his paranoia "amounted to impairment of his ability to form the intent to assault Preston" and that Muscatel's testimony was necessary to explain this to the jury. App. Br. at 12. The trial court did not err in rejecting the testimony as it pertained to Harris's intent to assault Preston. As we have discussed, Harris testified that he intended to shoot Preston in self-defense.
Reversed and remanded.
We concur: SEINFELD, J.P.T., and QUINN-BRINTNALL, C.J.
NOTES
[1] To Harris, "beat-down" meant to inflict bodily harm. IX-A RP at 538.
[2] On remand, the State will not be able to charge Harris with felony murder based on assault. In re Pers. Restraint Petition of Andress, 147 Wash.2d 602, 616, 56 P.3d 981 (2002), (assault is not a predicate felony for second degree felony murder).