IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 31227-5-III (Consolidated with No. 31338-7-III) |
| ALEKSANDR PAVLIK, | ) ) | |
| Petitioner. | ) | UNPUBLISHED OPINION |

KORSMO, J. — By way of this personal restraint petition (PRP), Aleksandr Pavlik renews his challenge to his Spokane County conviction for first degree assault. We conclude that he has not met his burden of proving prejudicial error occurred at trial. Accordingly, the petition is dismissed.

FACTS

The facts are drawn from our opinion in the direct appeal and related in slightly greater detail there. *State v. Pavlik*, 165 Wn. App. 645, 268 P.3d 986 (2011), *review denied*, 174 Wn.2d 1009 (2012). We initially note some of those background details, with additional discussion of relevant facts in conjunction with our analysis of the issues presented.

Around 1:00 a.m. on the morning of May 19, 2008, Mr. Pavlik was driving a car in northeast Spokane when he encountered two bicyclists riding abreast on the same street. He swerved to avoid them and angry words were shared between the bicyclists

and the driver. Mr. Pavlik drove to a traffic light at the bottom of the hill, stopped his car, opened the trunk,[1] and then fired a "warning shot" when the bicyclists were about a block away. He then drove east several blocks and parked, while the bicyclists stopped in a park close to where Mr. Pavlik had fired the "warning shot." *Id.* at 647.

After a short period of time, Mr. Pavlik drove to the park and stopped five feet from the bicyclists, both of whom were smoking cigarettes. One of them, Gabriel Leenders, saw the gun on the front seat of Pavlik's car and reached for it through the open car window. The two men struggled for control of the gun. Meanwhile, a Spokane Police Department Officer drove to the location. While he was stopped at the traffic light outside the park entrance, he saw the two men struggle and then heard a gunshot. Pavlik shot Leenders, causing serious injuries. *Id.* at 647-648.

As soon as the officer reached the car, Mr. Pavlik told him "you saw it, it was self-defense." *Id.* at 648. He made several additional claims of self-defense to other officers during the course of the morning and his interview with the detective. The prosecutor ultimately charged alternative counts of attempted first degree murder and first degree assault of Mr. Leenders. The case proceeded to jury trial. Mr. Pavlik received

---

[1] Whether or not Mr. Pavlik retrieved the gun from the trunk was a disputed question at trial. Mr. Pavlik testified that he had the gun in his pocket the entire time, but understood why the bicyclists believed he took the gun from the trunk. 165 Wn. App. at 647 n.1.

2

instructions on self-defense, while the prosecutor obtained a first aggressor instruction. *Id.* at 648-650.

The prosecutor successfully sought to exclude the "self-defense" statements at trial. *Id.* at 648-649. The jury acquitted Mr. Pavlik of attempted murder, but convicted him on the first degree assault charge. *Id.* at 650. A panel of this court affirmed the conviction on appeal. In the unpublished portion of the opinion, the court unanimously agreed that there was no error in giving the aggressor instruction. A divided panel upheld the exclusion of the "self-defense" statements at trial, concluding that although the trial court's analysis was unclear, the exclusion did not harm the defense. *Id.* at 650-657. In dissent, Judge Sweeney believed the statements should have been admitted as excited utterances. *Id.* at 657-662. The Supreme Court declined to review the case. *Id.* at 662.

Shortly thereafter, Mr. Pavlik filed a CrR 7.8 motion in superior court seeking a new trial on the basis of newly discovered evidence—a witness to the incident who had not been previously identified. He also filed a PRP with this court that raised three issues. The superior court transferred the CrR 7.8 motion to this court for consideration as a PRP. It was consolidated with the pending PRP.

A new attorney substituted for the attorney who filed the original PRP and an amended PRP was filed. Thereafter, this court stayed the action pending decisions of the Washington Supreme Court on public trial issues. After the decisions were entered and

3

supplemental briefing was received, the matter was heard by a panel of this court without oral argument.

## ANALYSIS

The brief in support of the amended petition raises eight contentions, many with sub-arguments, that we will address by topic in the order presented. Initially, we note some of the principles that govern multiple claims presented by the petition.

The burdens imposed on a petitioner in a PRP are significant. Because of the significant societal costs of collateral litigation often brought years after a conviction and the need for finality, relief will only be granted in a PRP if there is constitutional error that caused substantial actual prejudice or if a nonconstitutional error resulted in a fundamental defect constituting a complete miscarriage of justice. *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 409, 114 P.3d 607 (2005). It is the petitioner's burden to establish this "threshold requirement." *Id.* To do so, a PRP must present competent evidence in support of its claims. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-886, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992). If the facts alleged would potentially entitle the petitioner to relief, a reference hearing may be ordered to resolve the factual allegations. *Id.* at 886-887. A petitioner may not renew an issue that was addressed and rejected on direct appeal unless the interests of justice require reconsideration of that issue. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013).

Running through several of the arguments are various complaints that counsel failed to perform effectively. These complaints are resolved under the familiar standards governing ineffective assistance claims. The Sixth Amendment to the United States Constitution guaranty of counsel requires that an attorney perform to the standards of the profession. Counsel's failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. *State v. McFarland*, 127 Wn.2d 322, 334-335, 899 P.2d 1251 (1995). In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, courts apply a two-prong test whether or not (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures. *Id.* at 690-692. When a claim can be disposed of on one ground, a reviewing court need not consider both *Strickland* prongs. *Id.* at 697; *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied*, 162 Wn.2d 1007 (2007).

With these principles in mind, we turn to Mr. Pavlik's contentions.

*Public Trial*

Mr. Pavlik argues that his right to a public trial under Washington Constitution art. I, § 22, and his due process right to be present were violated during jury selection when cause challenges were exercised at sidebar in the courtroom outside the hearing of the defendant and peremptory challenges were conducted on paper. The Washington

Supreme Court now has decided both of these arguments contrary to Mr. Pavlik's position.

After general voir dire in this case, the court heard counsel's challenges for cause and hardship at sidebar (all challenges were by agreement) and then had the attorneys exercise their peremptory challenges on paper. The selection sheet subsequently was filed in the public court record. Mr. Pavlik remained at counsel table during the sidebar.

A criminal defendant has a constitutional right to a speedy public trial. Wash. Const. art. I, § 22. The public's right to open courts is guaranteed by Washington Constitution, article I, § 10. These related constitutional provisions assure the fairness of the judicial system and are collectively called the "'public trial right.'" *State v. Love*, 183 Wn.2d 598, 605, 354 P.3d 841 (2015). Three questions are considered in determining whether a courtroom proceeding violates the right to a public trial—does the public trial right attach to the proceeding, was the courtroom closed, and was the closure justified. *Id.* (citing *State v. Smith*, 181 Wn.2d 508, 513-514, 334 P.3d 1049 (2014)).

Both parties recognize that *Love* is the controlling case here. In *Love*, counsel and the court questioned the jury pool in open court. After questioning concluded, counsel approached the bench to discuss challenges for cause and the court reporter recorded the conversation. The discussion was visible to anyone in the courtroom, although the record does not indicate whether observers could hear what was said. Two jurors were dismissed for cause. Counsel then exchanged a list of jurors between them for silent

peremptory challenges. This list of struck jurors was filed in the public record. The judge then read the names of the empaneled jurors without further explanation. *Love*, 183 Wn.2d at 601-604.

The appellant in *Love* argued, as Mr. Pavlik argues here, that the cause challenges at the bench and the paper peremptory challenges effectively closed the courtroom and violated his right to be present at a critical stage of the trial. *Love*, 183 Wn.2d at 604. Applying its three-factor test for public trial violations, the *Love* court first noted that the right to a public trial extends to jury selection, including for cause and peremptory challenges. *Id.* at 605-606 (quoting *State v. Brightman*, 155 Wn.2d 506, 515, 122 P.3d 150 (2005)). When cause and peremptory challenges occur during a bench conference in open court, however, the appellant fails to carry his burden under the second prong of showing courtroom closure. *Id.* at 606. Although the public likely could not hear the discussion at the bench or see the struck juror sheet, the public had "ample opportunity to oversee the selection of Love's jury because no portion of the process was concealed from the public." *Id.* at 607. The voir dire procedures allowed the public to observe as counsel questioned the jurors, as jurors answered, and as counsel exercised challenges at the bench and on paper. *Id.* Consequently, the courtroom was not closed during any part of the voir dire process. *Id.*

Accordingly, *Love* compels rejection of Mr. Pavlik's public trial arguments here.

7

*Jury Instructions*

Mr. Pavlik next raises a series of challenges to counsel's failure to offer, or correct, instructions concerning self-defense. To the extent that he demonstrates that counsel may have erred, his claims fail due to lack of prejudice.

This court reviews claims of instructional error de novo. *State v. O'Donnell*, 142 Wn. App. 314, 321, 174 P.3d 1205 (2007). Generally, jury instructions must be supported by substantial evidence, allow the parties to argue their theories of the case, and when read together, inform the jury of the applicable law. *State v. Rodriguez*, 121 Wn. App. 180, 184-185, 87 P.3d 1201 (2004). A jury instruction on self-defense, however, must more than adequately convey the law. *Id.* at 185 (quoting *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997)). A jury instruction on self-defense "that misstates the harm that the person must apprehend is erroneous." *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

*Self-defense Instruction Related to First Degree Assault*

The trial court's instruction 20, on the justifiable use of force, was meant to define self-defense against both the attempted murder and the first degree assault charges. Originally, instruction 20 described only a defense to the charge of attempted murder. But after a request by defense counsel, the trial court added "first degree assault" to the first and last paragraphs of the self-defense instruction:

8

It is a defense to a charge of attempted murder and/or first degree assault that the first degree assault and/or attempted homicide was justifiable as defined in this instruction.

Attempted homicide is justifiable when committed in the lawful defense of the actor and/or any person in the actor's presence or company when:

(1)    the actor reasonably believed that the person injured intended to inflict death or great personal injury;

(2)    the actor reasonably believed that there was imminent danger of such harm being accomplished; and

(3)    the actor employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the actor, taking into consideration all the facts and circumstances as they appeared to him, at the time of and prior to the incident.

The State has the burden of proving beyond a reasonable doubt that the first degree assault and/or attempted homicide was not justifiable. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 126.[2]  When the court made these corrections and read the first paragraph of the instruction to the parties, defense counsel said, "Your Honor, I believe the next paragraph should also have to be modified.  It just says attempted homicide." Report of Proceedings (RP) at 454.  The judge answered, "It's going to track. Every time we use that, that's got to track down through the instruction." *Id.* The finalized instruction given to the jury, however, did not include "first degree assault" in the second paragraph.

---

[2] Unless otherwise stated, all cites refer to the record from the direct appeal for cause No. 29172-3-III.

9

Mr. Pavlik contends this incomplete amendment of instruction 20 constituted a failure to instruct the jury when first degree assault is justifiable in self-defense. Compounding the problem, he asserts, is the fact that the instructions on assault did not require the jury to consider whether the force used was unlawful.

The initial question is whether instruction 20 properly defined justifiable use of force for purposes of both attempted murder and first degree assault. Both charges here alleged Mr. Pavlik's use of a firearm; consequently, both involve the use of deadly force. *See* RCW 9A.16.010(2) ("Deadly force" is "the intentional application of force through the use of firearms or any other means reasonably likely to cause death or serious physical injury.") Deadly force may be used in self-defense only if the defendant reasonably believes he is threatened with death or great personal injury. *See Walden*, 131 Wn.2d at 474. When deadly force is at issue, the proper instruction for justifiable use of force is 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 16.02, at 234 (3d ed. 2008) (WPIC). *See Kyllo*, 166 Wn.2d at 866-867 (citing *Walden*, 131 Wn.2d at 475 n.3). This instruction states in relevant part:

> It is a defense to a charge of [murder] [manslaughter] that the homicide was justifiable as defined in this instruction.
> Homicide is justifiable when committed in the lawful defense of [the slayer] . . . when:
> 1) the slayer reasonably believed that the person slain . . . intended [to commit a felony] [to inflict death or great personal injury];
> 2) the slayer reasonably believed that there was imminent danger of such harm being accomplished; and

3)      the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to [him] [her], at the time of [and prior to] the incident.

The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

WPIC 16.02. As amended to correspond to the charges here, both of which involve deadly force, instruction 20 accurately states the elements of WPIC 16.02.

Mr. Pavlik challenges the court's failure to include "first degree assault" in the second sentence of instruction 20, which should have read: "Attempted homicide [*and/or first degree assault*] is justifiable when committed in the lawful defense of the actor." CP at 126. Due to this error, he claims, the jury was never instructed that it must evaluate when an assault is justifiable in self-defense. He fails to show, however, that the unartful language of instruction 20 misstates the law to his prejudice. The first sentence of the instruction clearly states that it is a defense to the charges of attempted murder *and/or first degree assault* that first degree assault and/or attempted murder was "justifiable as defined in this instruction." *Id.* Although the next sentence does not include first degree assault along with attempted murder, it defines when the action is "justifiable." Consequently, the jury was advised that both charges could be "justifiable" only if they met the three elements listed.

11

Alternatively, Mr. Pavlik contends that trial counsel should have proposed a self-defense instruction based on WPIC 17.02, which states generally that it is a defense to some charges that the force used is lawful, and such force is lawful when used by a person who reasonably believes he or she is about to be injured.[3] The "Note on Use" for WPIC 17.02 (from WPIC Chapter 17 "Lawful Force—Charges Other Than Homicide") state that WPIC 17.02 is used for "any charge other than homicide or attempted homicide." WPIC 16.02's "Note on Use" states that WPIC 160.02 is used when the offense charged is attempted murder, but does not address first degree assault with deadly force. Despite the language in the Note on Use for these two instructions, Washington courts hold that WPIC 17.02 is used for crimes involving nondeadly force, and WPIC 16.02 is reserved for crimes involving deadly force. *See Kyllo*, 166 Wn.2d at 866-867 (citing *Walden*, 131 Wn.2d at 475 n.3). Thus, a self-defense instruction based on WPIC 17.02 was not appropriate for Mr. Pavlik's charge of first degree assault with a firearm.

In summary, Mr. Pavlik does not show that trial counsel's failure to correct instruction 20—and that appellate counsel's failure to assign error—constituted error or actually prejudiced him. *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 787, 100 P.3d

---

[3] Mr. Pavlik also contends the instruction on assault should have included the bracketed language in WPIC 35.50 instructing that the assaultive act must be with "unlawful force." Inclusion of this language would have been relevant if the proper self-defense instruction had been based on WPIC 17.02, describing lawful force. Because WPIC 17.02 is not the proper instruction for use of deadly force, however, the significance of the "unlawful force" language in the assault instruction is minimal.

279 (2004). Additionally, trial counsel reasonably did not propose an instruction based on self-defense by nondeadly force.

*"Act on Appearances" Instruction*

Because self-defense is evaluated from the viewpoint of a reasonable person who knows and sees everything the defendant knows and sees, an "act on appearances" instruction must be given "to clarify that a defendant's reasonable belief, not actual danger, is all that is required." *State v. Freeburg*, 105 Wn. App. 492, 503-504, 20 P.3d 984 (2001). Here, the trial court informed the jury that a person asserting self-defense is entitled to act on appearances:

> A person is entitled to act on appearances in defending himself and/or another, if that person believes in good faith and on reasonable grounds that he and/or another is in actual danger of great bodily harm, although it afterwards might develop that the person was mistaken as to the extent of the danger.
> Actual danger is not necessary for an attempted homicide and/or first degree assault to be justifiable.

CP at 128.

Instruction 22 misstated the harm that the person must apprehend. Although instruction 20 correctly states that the actor must reasonably believe that the person injured intended to inflict "death or great personal injury," instruction 22 required reasonable belief that the actor "is in actual danger of great bodily harm." CP at 128. Elsewhere, the instructions defined "great bodily harm," a term also used in the "to convict" instruction on first degree assault: "Great bodily harm means bodily injury that

13

creates a probability of death, or that causes significant serious permanent disfigurement, or that causes a significant permanent loss or impairment of the function of any bodily part or organ." CP at 121, 123. Another instruction defines "great personal injury." "In determining whether a use of deadly force in self-defense was justifiable, the phrase 'great personal injury' means an injury that the actor reasonably believed, in light of all the facts and circumstances known at the time, would produce severe pain and suffering if it were inflicted upon either the actor or another person." CP at 127.

Because "great bodily harm" is an element of first degree assault with a specific definition that relates to that crime, the term "great bodily harm" should not be used in an "act on appearances" self-defense instruction. *Kyllo*, 166 Wn.2d at 867 (quoting *Walden*, 131 Wn.2d at 475 n.3). In line with the case law, the "act on appearances" section of WPIC 16.07 ("Justifiable Homicide—Actual Danger Not Necessary") was amended in July 2008 to replace "great bodily harm" with "great personal injury." Defense counsel was on notice in 2010 that the "act on appearances" language in instruction 22 was an inaccurate statement of the law. *See State v. Woods*, 138 Wn. App. 191, 197, 156 P.3d 309 (2007) ("reasonable attorney conduct includes a duty to investigate the relevant law"). Accordingly, defense counsel's performance was deficient in failing to object to the inaccurate instruction.

The question then is whether counsel's error prejudiced Mr. Pavlik's defense. Once a defendant produces evidence supporting self-defense, the burden shifts to the

14

State to prove the absence of self-defense beyond a reasonable doubt. *Walden*, 131 Wn.2d at 473. In many cases, an "act of appearances" instruction that requires belief in "actual danger of great bodily harm" impermissibly decreases the State's burden to disprove self-defense. *See, e.g.*, *Rodriguez*, 121 Wn. App. at 186, *cited with approval in Kyllo*, 166 Wn.2d at 867. In other cases, however, the erroneous use of "great bodily harm" has no prejudicial effect.

For example, in *Freeburg*, the defendant claimed he shot the victim in self-defense after the victim pointed a gun at the defendant's head. *Freeburg*, 105 Wn. App. at 496, 505, *cited with approval in Kyllo*, 166 Wn.2d at 867-868. The *Freeburg* "act on appearances" instruction, like the instruction here, improperly stated that the person defending himself must reasonably believe that he or another is in actual danger of great bodily harm. *Id.* at 503 n.29. The *Freeburg* instruction on justifiable homicide correctly stated that the actor must reasonably believe that the person slain intended to inflict death or great personal injury. *Id.* at n.28. Both "great bodily harm" and "great personal injury" were defined by language similar to the definitions in this case. *Id.* at n.30, n.31. Although *Freeburg* agreed that the act on appearance instruction should have used "great personal injury" rather than "great bodily harm," it held that there was no likelihood that the incorrect language affected the outcome of the trial. *Id.* at 505. The court noted that the defendant's trial theory was that he was faced with a threat of a gunshot at close range, "which easily and obviously satisfies both definitions." *Id.*

15

Mr. Pavlik testified that after he fired the "warning shot," one of the cyclists said that they were going to kill him. RP at 360. Later, when he confronted the cyclists in the park, he testified that one of the men began punching him, reached into the car to get the gun, and said he was going to shoot Mr. Pavlik. RP at 363. Mr. Pavlik's defense theory was that he shot the man who was reaching for the gun because he was afraid the man would kill him. RP at 365. This fear of imminent death satisfies both the "act on appearances" instruction (belief in actual danger of "great bodily harm", defined in part as "probability of death") and the self-defense instruction (reasonable belief "that the person injured intended to inflict death or great personal injury").

Here, as in *Freeburg*, if the jury had believed Mr. Pavlik's testimony, "it would doubtless have believed he faced a threat of great bodily harm." 105 Wn. App. at 505. Consequently, there is no reasonable probability that the erroneous "act on appearances" instruction affected the outcome of the trial. Mr. Pavlik thus fails to show that trial counsel's failure to object to the erroneous instruction prejudiced his defense.

*Failure to Propose an Instruction on Defense Against Multiple Assailants*

Mr. Pavlik next contends the trial court erred by giving a self-defense instruction that required the jury to find he reasonably believed that solely "the person injured" intended to inflict death or great personal injury. CP at 126. He contends defense counsel should have requested that the instruction state that the person injured "or others whom the defendant reasonably believed were acting in concert with the person"

16

intended to inflict death or great personal injury. *See* bracketed language in WPIC 16.02. With this added language, he asserts, the jury would have been allowed to consider his right to act on reasonable appearances in a multiple-assailant attack.

The petition relies upon *State v. Irons*, 101 Wn. App. 544, 4 P.3d 174 (2000) and *State v. Harris*, 122 Wn. App. 547, 90 P.3d 1133 (2004). In *Irons*, the man shot by Mr. Irons was accompanied by three other men, who surrounded Mr. Irons and assisted in confronting Mr. Irons. One of the other men threatened Mr. Irons with a beer bottle. The trial court refused defense counsel's request for a justifiable homicide instruction that allowed the jury to consider that he faced multiple assailants, only one of whom was the victim. *Irons*, 101 Wn. App. at 552. On appeal, Division One held that the instructions allowing the jury to consider only a reasonable threat from the victim inadequately conveyed the law of self-defense because those instructions did not make it manifestly clear that the jury could consider that Mr. Irons faced multiple assailants acting in concert. *Id.* at 552-553.

In *Harris*, 122 Wn. App. at 550-551, Mr. Harris testified that he shot the victim because he was afraid the victim and another man were about to attack him. At trial on a charge of second degree felony murder, defense counsel proposed a self-defense instruction based on WPIC 16.02 that instructed the jury that Mr. Harris had to believe that the victim intended to inflict death or great personal injury. Citing *Irons*, Division Two held that the self-defense instruction was inconsistent with the "act on appearances"

17

instruction, which instructed the jury that it could consider all the facts and circumstances as they appeared to Mr. Harris at the time of the incident. *Id.* at 555. Because this inconsistency was at odds with Mr. Harris's theory that he had been in imminent danger from two assailants, the court held that defense counsel was ineffective in proposing the improper instruction and that the error was prejudicial. *Id.*

Mr. Pavlik testified at trial that after he pulled into the parking lot, the cyclists appeared and told him they had called the police. He stated he told them that was good, because he wanted to talk to the police. Then, he testified, Mr. Leenders suddenly ran up, punched Mr. Pavlik several times, and lunged through the driver's window to grab the handgun sitting on the passenger seat. At the same time, he stated that the other cyclist was moving around to the back of the car and Mr. Pavlik was concerned that he would try to enter the passenger door. But he also stated that he grabbed his gun and shot Mr. Leenders before Mr. Leenders could use the gun to kill him. Although Mr. Pavlik claimed he felt threatened by both men, his testimony established that it was the imminent and direct threat of Mr. Leenders killing him with the gun that caused him to shoot Mr. Leenders. Unlike in *Irons* and *Harris*, the other bicyclist did not accompany Mr. Leenders in the direct confrontation of Mr. Pavlik and did not threaten Mr. Pavlik with an imminent assault.

Consequently, the evidence was insufficient to support a multiple assailant instruction. *See Irons*, 101 Wn. App. at 549 (jury instructions must be supported by

18

substantial evidence). Trial counsel was not ineffective for failing to propose one, and appellate counsel was not ineffective for failing to raise the issue on appeal.

*Failure to Propose an Instruction Related to Defense Against a Felony*

Mr. Pavlik also contends trial counsel was ineffective because she did not propose an instruction based on WPIC 16.03. This instruction is appropriate when a defendant contends deadly force was reasonably necessary to protect against a felony: "Homicide [or attempted homicide] is justifiable when committed in the actual resistance of an attempt to commit a felony." WPIC 16.03. Under RCW 9A.16.050(2), homicide is justifiable when committed in "the actual resistance of an attempt to commit a felony upon the slayer, in his or her presence, or upon or in a dwelling, or other place of abode, in which he or she is." As stated in the "Comment" to WPIC 16.03, "Although the statute does not limit the kind of attempted felony that will justify a homicide, the deadly force appears to be limited to resisting felonies committed by violence such as those when great personal injury is involved or in which human life is threatened."

The class of felonies supporting the use of deadly force in self-defense include felonies committed by violence and surprise, such as murder, robbery, and rape. *See Brightman*, 155 Wn.2d at 522 (quoting *State v. Nyland*, 47 Wn.2d 240, 242, 287 P.2d 345 (1955)) (justifiable homicide). Because deadly force must be reasonably necessary under the circumstances, the attack on the defendant usually must threaten life or great bodily harm. *Id.* at 522-523 (quoting *State v. Brenner*, 53 Wn. App. 367, 377, 768 P.2d 509

19

(1989), *overruled on other grounds by State v. Wentz*, 149 Wn.2d 342, 68 P.3d 282 (2003)). The only significant difference between WPIC 16.02, which was given in Mr. Pavlik's case, and WPIC 16.03 is that the deadly force in WPIC 16.03 is used during the actor's actual resistance to the felony, while the deadly force in WPIC 16.02 is used when the actor reasonably believes in the imminent danger that the victim intends to commit a violent felony.

At the time Mr. Pavlik shot him, Mr. Leenders was unarmed. As Mr. Pavlik testified, he was afraid that Mr. Leenders would get the gun and use it to kill him. Thus, the instruction that more closely matched the defense theory was WPIC 16.02, because Mr. Pavlik claimed he reasonably feared that Mr. Leenders intended to get the gun and then kill him. Defense counsel's decision to instruct the jury on self-defense against an intended threat rather than during actual resistance was a legitimate tactical choice that should not be second-guessed by this court. *Kyllo*, 166 Wn.2d at 862-863.

Mr. Pavlik has failed to establish that his counsel rendered ineffective assistance with regard to the jury instructions.

*Jury Unanimity*

The petition next contends that the instructions erroneously failed to ensure unanimity because there were two potential first degree assaults—the "warning shot" and the injurious shot fired from the car, but only one charge. As the State elected which assault was at issue, there was no error.

A jury must unanimously agree to a criminal verdict. *State v. Smith*, 159 Wn.2d 778, 783, 154 P.3d 873 (2007) (citing Wash. Const. art. I, § 21). "When the prosecution presents evidence of several acts that could form the basis of one count charged, either the State must tell the jury which act to rely on in its deliberations or the court must instruct the jury to agree on a specific criminal act." *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988), *abrogation on other grounds recognized in In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 600-601, 316 P.3d 1007 (2014).

The jury was instructed that to convict Mr. Pavlik of first degree assault, it needed to find beyond a reasonable doubt:

> (1)  That on or about the 19th day of May, 2008, the defendant assaulted Gabriel A. Leenders.
> (2)  That the assault was committed with a firearm;
> (3)  That the defendant acted with intent to inflict great bodily harm; and
> (4)  That the acts occurred in the State of Washington.

CP at 121. Instruction 16 sets out the common law definitions of assault:

> An assault is an intentional touching or striking or shooting of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking or shooting is offensive, if the touching or striking or shooting would offend an ordinary person who is not unduly sensitive.
> An assault is also an act done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.
> An assault is also an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another

a reasonable apprehension and imminent fear of bodily injury even though
the actor did not actually intend to inflict bodily injury.

CP at 122. *See Smith*, 159 Wn.2d at 781-782. Neither party proposed an instruction

requiring the jury to be unanimous as to what act constituted the assault.

Here, the State told the jury during closing argument that the assaultive act was

Mr. Pavlik actually shooting Mr. Leenders. In reviewing the elements of first degree

assault, the prosecutor noted that the primary element was that Mr. Pavlik assaulted Mr.

Leenders with a firearm, and then stated, "This is undisputed. The defense is claiming

self-defense, that Mr. Pavlik admitted that he shot him. That is not in dispute." RP at

482. The prosecutor then explained that the difference between the charge of attempted

murder and the charge of assault was whether Mr. Pavlik acted with premeditation and

tried to kill Mr. Leenders with that injuring shot. RP at 483. Defense counsel in closing

remarked, "there is a gunshot wound and that is the type of harm that's required for first

degree assault[,] but you also have to have an absence of self-defense beyond a

reasonable doubt." RP at 507. The "warning shot" was discussed solely in regard to its

evidence that Mr. Pavlik acted in anger rather than fear that night, and to contradict Mr.

Pavlik's testimony that he acted reasonably. RP at 509, 512-514.

Although the "warning shot" incident could have constituted an assault done with

the intent to create fear of bodily injury under instruction 16, the State clearly told the

jury that the act underlying the first degree assault charge was the shooting of Mr.

Leenders in the car. Consequently, a unanimity instruction was not necessary under these circumstances. *Kitchen*, 110 Wn.2d at 411. Defense counsel's failure to propose such an instruction was reasonable, as was appellate counsel's failure to raise the issue of unanimity on appeal.

*Newly Discovered Evidence*

Mr. Pavlik next argues that he should be entitled to a new trial based on the newly discovered evidence of an additional witness to the shooting who would have bolstered the defense theory that Mr. Leenders was the aggressive person who brought about the need for Mr. Pavlik to act in self-defense. This claim fails to satisfy our newly discovered evidence standard.

To grant a new trial for "newly discovered evidence," Washington courts must apply a five factor test:

> A new trial will not be granted on that ground unless the moving party demonstrates that the evidence (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching.

*State v. Williams*, 96 Wn.2d 215, 222-223, 634 P.2d 868 (1981). "The absence of any one of the five factors is grounds for the denial of a new trial." *Id.* at 223.

Here, the bicyclists testified at trial that they were in the park smoking cigarettes when Mr. Pavlik drove his car up to them. RP at 86, 116-117. Mr. Pavlik told the jurors that he had just stopped in the park and "didn't even have a second" before the bicyclists

23

came up to him; he had not seen them before pulling in. RP at 363. In contrast, the new witness would have testified that the bicyclists left the area before Mr. Pavlik stopped at the park and did not return until a few minutes later. He said one of the bicyclists attacked the driver through the window and the other went around to open the passenger door. Declaration at 2. In contrast, the officer saw only Leenders at the car, while the second bicyclist was sitting on his bike behind the car when the shot was fired. RP at 132-134.

This declaration is not so compelling that we believe it would have changed the result of the trial. Instead, all it shows is yet another view of the incident—and one that was dramatically at odds with the defendant's own testimony concerning the timing of the shooting, as well as inconsistent with testimony from the bicyclists and the officer. Mr. Pavlik also does not demonstrate why this new evidence was not discovered before trial. He does not set forth any evidence of efforts made by the defense, if any, to discover additional witnesses to the shooting or otherwise explain how the witness could only have been found post-trial.

This evidence fails the first and third prongs of the newly discovered evidence test. Accordingly, the new declaration provides no basis for relief.

*Police Reports Concerning the Bicyclists*

Mr. Pavlik next argues that the prosecution failed to turn over evidence of police reports involving the two bicyclists and that his counsel was ineffective in failing to

discover them through a Public Records Act, ch. 42.56 RCW, request. While he presents no relevant authority in support of his novel contention that both counsel needed to check the bicyclists' prior contacts with police, we need not resolve that contention in light of the fact that he can show no prejudice from the alleged errors.

The decisions in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) and its progeny established that the government has a duty to disclose favorable evidence that is material to the guilt or punishment of the accused. *In re Pers. Restraint of Stenson*, 174 Wn.2d 474, 486, 276 P.3d 286 (2012). This duty encompasses both impeachment and exculpatory evidence. *Id.* A prosecutor has a duty to learn of and disclose any favorable information known by law enforcement. *Id.* A petitioner claiming a *Brady* violation must show that the evidence was favorable to him, that it was suppressed by the State, and that this suppression prejudiced him. *Id.* at 486-487. The evidence is "material" if there is a reasonable probability that, if it had been disclosed to the defense, the result of the proceeding would have been different. *State v. Mullen*, 171 Wn.2d 881, 894, 259 P.3d 158 (2011). The evidence is considered collectively, not item by item. *Id.* at 897.

One important aspect of materiality under *Brady* is the admissibility of the evidence. *Id.* If the evidence is not admissible, it is unlikely that its nondisclosure could affect the outcome of the proceeding. *Id.* (quoting *State v. Gregory*, 158 Wn.2d 759, 797, 147 P.3d 1201 (2006)). Under ER 608(b), specific instances of a witness's conduct used

25

to attack his credibility may not be proved by extrinsic evidence. "They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness . . . concerning the witness'[s] character for truthfulness or untruthfulness."

Through current counsel, Mr. Pavlik obtained multiple police reports and court records detailing the bicyclists' activities involving the police over the years. These records show that the police investigated many reports of substance abuse, harassment (sometimes by, sometimes targeting the men), domestic violence, and suicide attempts (by Mr. Leenders). *See* ex. 28-32. Some of the police reports state that the men lied to police about their involvement in the incidents. Mr. Leenders, in particular, allegedly lied to police on more than one occasion in attempts to get other people in trouble. *See* PRP brief at 35 n.16; Appendix D.

Only the evidence related to the untruthfulness of Mr. Leenders and Mr. Smith potentially was admissible under ER 608(b).[4] For impeachment purposes, evidence that the witnesses had lied to the police on prior occasions was favorable to the defense. But even if the prosecution had a duty to find and disclose this evidence, a question we need not answer, Mr. Pavlik does not show that it was material.

_____

[4] Pending or unproven conduct is not a basis for impeachment. *State v. Cardenas*, 146 Wn.2d 400, 413, 47 P.3d 127, 57 P.3d 1156 (2002).

To show that suppressed evidence was material to the defense, the defendant need only show that the suppression undermines confidence in the outcome of the trial. *State v. Davila*, 184 Wn.2d 55, 73, 357 P.3d 636 (2015). Here, even if trial counsel had obtained the evidence of untruthfulness before trial, there is no reasonable probability that its use during cross-examination would have resulted in a different verdict. Both witnesses admitted that they had been drinking high-alcohol beer on the night of the incident, were riding bicycles in violation of the rules of the road, and gave inconsistent versions of the events on different occasions to the police. Other eyewitnesses testified and corroborated relevant parts of the cyclists' stories, including the initial confrontation, the warning shot, and the return of Mr. Pavlik to the scene for the final confrontation. Additional information that in the past the witnesses had lied to police would not have appreciably undermined the State's evidence that, however provocative the cyclists had been, Mr. Pavlik sought the final encounter. Because Mr. Pavlik cannot establish prejudice, he also does not show that trial counsel's failure to investigate further into the cyclists' history of police engagement prejudiced the defense.

Accordingly, even if there was error here, it was not prejudicial to the defense.

*Ineffective Cross-examination*

Mr. Pavlik next argues that his counsel was ineffective in her cross-examination of Mr. Leenders and failed to correct the error when examining the lead investigating

27

detective, Chet Gilmore. This argument also fails to establish that counsel erred in such a prejudicial manner that she rendered ineffective assistance.

Whether or not counsel properly conducted examination of witnesses has been a topic of earlier ineffective assistance of counsel arguments. Cross-examination is a matter of trial strategy that typically is immune from challenge as long as it falls within the range of reasonable representation. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 720, 101 P.3d 1 (2004). Even lame or ineffectual cross-examination does not establish ineffective assistance of counsel. *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 489, 965 P.2d 593 (1998).

Leenders testified on direct examination that he told Pavlik "something along the lines of 'you better kill me'" while riding toward the car after the "warning shot." RP at 85. Defense counsel did not address the statement during her cross-examination. She did ask Leenders if he remembered telling the detective he was unsure if he would talk out of fear of being charged with attempted carjacking; Leenders answered "No." RP at 105. The defense later called the detective to the stand to testify concerning his interviews of the participants, including his interview of Mr. Leenders at the hospital. When she attempted to ask Detective Gilmore about the carjacking comment, the court twice sustained objections to the use of leading questions. RP at 329. Counsel then turned to questioning the detective concerning Mr. Leenders' attitude.

Mr. Pavlik now contends that counsel should have cross-examined Leenders about the "you better kill me" comment, arguing that the police reports more fully reported the statement as "If that's a gun, you're going to have to shoot me and kill me 'cause I'm going to kill you if that's a gun.'" Ex. 17 at 9. While there unlikely would have been little harm in asking Mr. Leenders if he remembered his statement as contained in the police report, there was no need to do so. His answer to the prosecutor's question suggests his memory of the statement was unclear. More critically, the information was only important to the defense if Mr. Pavlik was aware of the statement because that would relate to the reasonableness of his action in shooting Leenders. Mr. Pavlik did in fact testify to the contents of the statement and even told the jurors: "That's their exact words and it's in the report." RP at 360.

Thus, the substance of this evidence was before the jury in the form where it was most useful—from the defendant to establish the reasonableness of his fear of Leenders. The failure to ask Leenders if he had a better memory of the statement did little or nothing for the defense case. The lack of cross-examination was not error and also did not prejudice the defense.

Similarly, the failed examination of the detective did not harm the defense. Whether or not Leenders was fearful of facing charges was an entirely different question from whether Pavlik acted reasonably. Leenders had testified on cross-examination that he did not remember talking to the detective about carjacking; whether he did so could

29

only be used to impeach his memory. Mr. Pavlik never contended that he feared having his car stolen. Rather, he was afraid Leenders was going for the gun to shoot him. Accordingly, the evidence was not relevant to the defense. There was no harm in the failure to develop the evidence more fully.

Petitioner has not established that his counsel performed ineffectively in the two noted examples.

*Conflict of Interest*

Mr. Pavlik next argues that his public defender labored under a conflict of interest because a public defender supervisor who met with him before assigning the case to his trial counsel later represented Mr. Leenders while the Pavlik case was pending. He fails to demonstrate that an actual conflict of interest existed.

The Sixth Amendment guarantee of effective counsel includes representation by a counsel free of a conflict of interest. *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981); *State v. Dhaliwal*, 150 Wn.2d 559, 566, 79 P.3d 432 (2003). A conflict of interest arises if defense counsel owes duties to a party whose interests are adverse to the defendant's. *State v. White*, 80 Wn. App. 406, 411-412, 907 P.2d 310 (1995). Under the Washington Rules of Professional Conduct (RPC), an attorney is prohibited from representing a client if the attorney's duties will be directly adverse to another client or will materially limit the attorney's representation. RPC

30

1.7(a). All members of a law firm are treated as a single attorney for the purposes of RPC 1.7. RPC 1.10(a).

It is petitioner's obligation to establish that an actual conflict of interest existed from the representation of multiple parties. *Dhaliwal*, 150 Wn.2d at 566-573; *Mickens v. Taylor*, 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291(2002). "We agree that under *Mickens* reversal is not mandated when a trial court knows of a potential conflict but fails to inquire." *Dhaliwal*, 150 Wn.2d at 571. Thus, petitioner must show that an actual conflict of interest existed that adversely affected counsel's performance. *Pirtle*, 136 Wn.2d at 474. Mr. Pavlik fails to establish either.

First, there appears to be no actual conflict of interest. The public defender's office did not represent both Pavlik and Leenders in the same case. The supervisor did not ever represent Pavlik on this case, but merely met with him before assigning the case to a trial attorney. That fact alone does not establish a conflict of interest.

Second, the alleged conflict had no adverse effect on counsel's performance. Trial counsel rigorously and effectively cross-examined Mr. Leenders at Pavlik's trial. Speculation that she might have done more is simply insufficient to establish that she acted with divided loyalty. There must be evidence that divided loyalty actually impacted the case. There is none of that here.

The PRP fails to establish that the public defender's office had a conflict of interest in this action.

31

*Reconsideration of Hearsay Issue Decided on Direct Appeal*

Lastly, Mr. Pavlik asks us to revisit the exclusion of his "self-defense" statements that were the topic of the published portion of his direct appeal. Because he has presented no basis for us to do so, we decline his invitation.

Mr. Pavlik argues that the newly discovered witness makes it important to revisit the trial court's exclusion of the "self-defense" statements he made to police on the morning of the incident. There is no connection between that evidence, which does not even warrant a new trial, and our decision in the direct appeal.

As noted previously, the published portion of the direct appeal addressed whether the trial court erred in excluding the defendant's statements. One issue, and the reason the case was published, rejected the prosecutor's argument that there was a "self-serving hearsay" rule that precluded a party from admitting his own statements at trial. *Pavlik*, 165 Wn. App. at 650-654. The remaining question was whether or not the statements were admissible as excited utterances. *Id.* at 654. The majority agreed that they could have been excited utterances, but it was unclear if the trial court actually found that the statements satisfied the rule. *Id.* at 654-656. Instead, the majority concluded that even if the statements should have been admitted, any error was harmless. *Id.* at 656-657.

There is no basis for revisiting that decision. If the evidentiary exclusion was harmless on direct appeal, it is even more harmless in this collateral attack. More importantly, nothing about the new evidence, even if it were admissible, impacts that

analysis of the direct appeal. It was cumulative to the defendant's (and Mr. Leender's) testimony that the bicyclist reached into the car to get the gun, and it was contrary to the defendant's testimony that he had just arrived at the park when the bicyclists confronted him. None of the evidence bears on whether the trial court correctly or incorrectly analyzed the statements as excited utterances, and the inconsistent evidence does not make the exclusion of that evidence any less harmless than it was.[5] Accordingly, we will not revisit the decision in the direct appeal.

As has been noted on many occasions, there are many ways to try a criminal case and seldom, if ever, would two attorneys try the same case in the same manner. Mr. Pavlik has pointed to some things his counsel could have done differently, but he has not shown any that she had to do differently. The minor errors identified in this opinion did not impact the fairness of the trial. Accordingly, the petition has failed to demonstrate prejudicial error in the trial proceedings.

The petition is dismissed.

---

[5] Although Mr. Pavlik insists the initial statement could only be spontaneous, the trial court could easily have concluded otherwise. Mr. Pavlik admittedly drove back to the scene after several minutes of reflection on what was happening and had the opportunity to prepare a self-defense story in the event one was needed. This is not a clear case for admitting his statements as excited utterances.

No. 31227-5-III
*In re PRP of Pavlik*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.