# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51348-0-II |
| Respondent, | |
| v. | |
| YANCY WADE RAY, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, A.C.J. — Yancy Ray was charged with murder in the second degree after he shot and killed Hyson Sabb. Ray argued at trial that he was acting in self-defense, but the fact witnesses at the scene testified that Ray did not shoot Sabb in self-defense. After a jury trial, the jury found Ray guilty of murder in the second degree. At sentencing, the trial court found that Ray had three strike offenses, including prior Oregon convictions for manslaughter and third degree robbery, and concluded that he was a persistent offender. The trial court sentenced Ray to life in prison without the possibility of release.[1] Ray appeals his judgment and sentence.

Ray argues that (1) the evidence is insufficient for a rational trier of fact to conclude that he did not act in self-defense, (2) his prior Oregon robbery conviction does not count as a predicate strike offense because the Oregon court failed to determine whether there was a factual basis for his plea, (3) the POAA violates article 1, section 14 of the Washington State Constitution because it did not allow the sentencing court to consider his youthfulness for the 1993 robbery, a mandatory

---

[1] Ray was sentenced under the Persistent Offender Accountability Act (POAA). RCW 9.94A.570.

life sentence without the possibility of release violates article 1, section 14 of the Washington State Constitution, and the *State v. Fain*[2] test of proportionality is no longer adequate, (4) the legislature's 2019 amendments to RCW 9.94A.030(33) removing second degree robbery as a most serious offense apply retroactively, and thus, his sentence must be reversed, and (5) the trial court erred by imposing a $100 DNA collection fee and a $200 criminal filing fee.

We hold that there is sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Ray did not act in self-defense; the prior robbery conviction counts as a predicate strike offense under the POAA; the POAA does not violate article 1, section 14 of the Washington State Constitution because in *State v. Moretti*,[3] our Supreme Court held that a mandatory life sentence without the possibility of release is constitutional even though a defendant commits a predicate offense as a youthful offender, and Ray's argument, that the *Fain* test of proportionality is no longer adequate, fails; and the trial court erred by imposing the $100 DNA collection fee, the $200 criminal filing fee, and interest on nonrestitution legal financial obligation (LFO) fees.[4]

We affirm Ray's judgment and sentence, but remand with an order to strike the $100 DNA collection fee, the $200 criminal filing fee, and all interest on the nonrestitution LFOs, and to amend the judgment and sentence accordingly.

---

[2] 94 Wn.2d 387, 617 P.2d 720 (1980).

[3] 193 Wn.2d 809, 834, 446 P.3d 609 (2019).

[4] Although not raised by Ray, the State concedes that imposing interest on nonrestitution LFOs was improper.

FACTS

I. BACKGROUND FACTS

Ray admitted that he shot Sabb on September 3, 2016. On that day, Horace Smith, who lived in the house, was moving out, so a U-Haul truck was parked in the driveway. Evelyn Watson, Eboni Peterson, Adreine Fuqua, and Kierra Jones were four of the witnesses at Smith's house that day.

Ray came to the house that evening, before Sabb arrived, and was on his cell phone. Peterson interrupted Ray's phone call. Ray got upset with her, and they began to argue. Peterson walked out of the house, and Ray followed her. Neighbors heard arguing between one man and one woman. Ray called Peterson a "b****." Verbatim Report of Proceedings (VRP) at 1667. Sabb appeared and began to stick up for Peterson, whom he considered a sister. Sabb told Peterson to go to his car where his girlfriend was, which she did. As Ray was leaving, witnesses heard him say, "You'll find out how I will handle this." VRP at 712. Ray then drove his car "around the corner crazy," almost hitting Peterson. VRP at 1444. Sabb then yelled to Peterson to "get the gun." VRP at 1446.

Fuqua, Sabb's girlfriend, was in the driver seat of Sabb's car, and she popped the trunk of the car where the gun case was and handed gloves from the side door to Sabb. Peterson gave the gun case to Sabb who went back into the house. Neither Fuqua nor Peterson saw Sabb open the gun case. Upon discovering that he did not have any bullets for the gun, Sabb asked Jones to go get bullets for him, but she refused. After Peterson gave the gun case to Sabb, she ran back to the car.

Fuqua testified that she was still sitting in the driver seat of the car when she saw Ray drive up to the house, walk towards the house with a gun pointed, and cock the gun. Fuqua testified that Ray left his car running and his car door open. Sabb and Jones were walking out of the house with Sabb holding the closed gun case. As they walked out of the front door, Ray walked towards them with a gun pointed at them.

Jones testified that she recognized Ray's voice from when he was arguing with Peterson mere minutes before. Ray said, "I told you I was coming back." VRP at 1675. Ray was standing parallel in the yard to the back tire of the U-Haul truck with his gun pointed at Sabb and Jones. Jones jumped behind the U-Haul, and then she heard multiple shots. Peterson testified that by the time she got back to the car where Fuqua was waiting, she heard gunshots. Jones testified that there was no physical fight between Ray and Sabb before Ray shot Sabb. Multiple witnesses testified that they did not hear any shouting or arguing before the gunshots.

Ray had a different version of events than did the other witnesses. Ray testified that he would regularly buy drugs from Sabb. Ray sold the marijuana that he had purchased from Sabb for a profit.

Ray testified that on the night of the shooting, he went to the house to buy drugs. He testified that he did not talk to anybody, and when he was leaving, he saw Sabb. Sabb began to question him about the money that Ray owed him. Ray testified that Sabb was "aggressive, intimidating, agitated, [and] angry." VRP at 2411. According to Ray, Peterson then jumped into their conversation. Ray cursed at her, which upset Sabb even more. Ray told Sabb that he was going to leave and come back with the money he owed. Ray testified that he went back to his

4

house to get the money, but he did not have enough to pay his full debt to Sabb. Ray put his revolver in his back pocket as he was leaving his car to go back to Smith's house.

Ray testified that as he walked toward the house, Sabb opened the door. Once Ray told Sabb that he did not have all the money to pay his debt, Sabb punched him in the face. Ray testified that he felt like he did a "complete somersault backwards off the steps," and that he lost consciousness for a second. VRP at 2423. When Ray regained consciousness, Sabb's hand was in his right pocket, where Ray's money was. Ray grabbed Sabb's hand, and Sabb began to kick him. Ray testified that he struggled to get away from Sabb. Eventually, Ray kicked Sabb backwards and began to run away. Sabb began shooting at Ray from about six or seven feet away, but he never hit him. Ray turned around and shot Sabb one time.

Ray ran to his car to leave, but his keys were not in the ignition. He tossed the gun to the passenger side of the car and began to run. Because Ronson Clay was Ray's neighbor, Ray ran to his house and Clay gave him a ride to a local Walmart. Ray fled to Oregon, where he stayed for a few weeks until he eventually turned himself in to the police. Ray testified that he fled because he was afraid for his safety.

Ray's version of the events was contradicted by other trial witnesses. For example, Ray testified that he shot Sabb with a .38 revolver and that he tossed the revolver to the passenger seat of his car before he ran from the scene. Police officers never recovered a revolver. Ray testified extensively that he and Sabb had a physical altercation, which was why Ray shot Sabb. However, Jones affirmatively stated that there was no physical altercation between Ray and Sabb, only a verbal altercation before Ray left in his car. Jones testified that when Ray returned to the house, Sabb did not have a chance to defend himself because Ray returned with a gun and opened fire

5

upon Sabb without provocation. Further, Clay, who drove Ray after Ray shot Sabb, testified that he did not see any injuries or blood on Ray, and that Ray's demeanor was calm.

## II.  TRIAL

The State charged Ray with one count of murder in the second degree and one count of unlawful possession of a firearm in the first degree.

The trial lasted for six weeks. The State's fact witnesses included people who were at the house the day of the shooting, neighbors, and Ray's stepson. Ray testified that he was acting in self-defense, and thus, it was justifiable homicide. The trial court instructed the jury on the defense of justifiable homicide, stating that the State had the burden of proving beyond a reasonable double that the homicide was not justified.

The jury found Ray guilty on both counts and returned a special verdict finding that Ray was armed with a firearm at the time he committed the murder.

## III.  SENTENCING

The State asked the trial court to impose a life sentence without the possibility of release under the POAA. This request was predicated on Ray's prior Oregon convictions for manslaughter in the first degree[5] and robbery in the third degree.

At sentencing, the State provided certified copies of the judgments and sentences for Ray's prior felony convictions, including the prior Oregon manslaughter and robbery convictions, and certified copies of Ray's no contest plea for the robbery conviction. Ray's plea agreement for the

---

[5] Ray does not challenge the trial court's ruling that the manslaughter conviction is a predicate strike offense under the POAA.

robbery conviction contained a section for a statement of facts, but this section was crossed out and did not contain any information.

Ray claimed that the prior robbery conviction was facially invalid based on insufficient facts in the plea document because the fact section was crossed out and did not contain any facts. Ray was initially charged in Oregon with robbery in the second degree. The guilty plea form, however, shows that Ray pled guilty to robbery in the third degree—a lesser included offense of robbery in the second degree. Ray did not provide the trial court with a transcript from the Oregon robbery sentencing hearing.

Based on the certified copies of the prior plea agreement and the judgment and sentence for the Oregon robbery conviction, the trial court ruled that the prior robbery conviction was valid. The trial court also ruled that under *State v. Ammons*,[6] the State was not required to prove the constitutional validity of the prior conviction in order for the conviction to count as a predicate strike offense under the POAA. The trial court stated that Ray failed to identify any facial invalidity regarding the prior robbery conviction under *Ammons*. Thus, the trial court concluded that the robbery conviction was constitutionally valid.

The trial court next determined that the robbery conviction was legally comparable to the most serious offense of second degree robbery in Washington. Thus, the trial court concluded that Ray's robbery conviction was a most serious offense in Washington. Because Ray had three strike offenses, he was a persistent offender, and the court imposed a life sentence without the possibility of release.

---

[6] 105 Wn.2d 175, 713 P.2d 719 (1986).

The trial court found Ray indigent at the time of sentencing. The court imposed a $100 DNA collection fee and a $200 criminal filing fee.[7] The court also ordered that all the LFOs accrue interest from the date of the judgment. Ray appeals his conviction and judgment and sentence.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Ray argues that the evidence was insufficient for a rational trier of fact to conclude beyond a reasonable doubt that he did not act in self-defense. We hold that the evidence supports the jury's finding beyond a reasonable doubt that Ray did not act in self-defense.

In a criminal case, the State must prove each element of a crime beyond a reasonable doubt. *State v. Kalebaugh*, 183 Wn.2d 578, 584, 355 P.3d 253 (2015); *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). To satisfy this burden, the State must present substantial evidence supporting a finding that it has proved each of the crime's elements beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). In a sufficiency of the evidence claim, the defendant admits the truth of the evidence and we view the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *Cardenas-Flores*, 189 Wn.2d at 265-66. Credibility determinations are made by the trier

---

[7] The court also imposed a mandatory $500 crime victim assessment which Ray does not challenge.

of fact and are not subject to review. *Cardenas-Flores*, 189 Wn.2d at 266. Circumstantial and direct evidence are equally reliable. *Cardenas-Flores*, 189 Wn.2d at 266.

A criminal defendant bears the initial burden of providing some evidence of self-defense. *State v. Walden*, 131 Wn.2d 469, 473-74, 932 P.2d 1237 (1997). Once the defendant provides some evidence, the burden shifts to the State to disprove the claim of self-defense beyond a reasonable doubt. *Walden*, 131 Wn.2d at 473-74. "Evidence of self-defense is evaluated 'from the standpoint of the reasonably prudent person, knowing all the defendant knows and seeing all the defendant sees.'" *Walden*, 131 Wn.2d at 474 (quoting *State v. Janes*, 121 Wn.2d 220, 238, 850 P.2d 495 (1993)). The "general rule in Washington is that reasonable force in self-defense is justified if there is an appearance of imminent danger, not actual danger itself." *State v. Bradley*, 141 Wn.2d 731, 737, 10 P.3d 358 (2000). "'[T]he degree of force used in self-defense is limited to what a reasonably prudent person would find necessary under the conditions as they appeared to the defendant.'" *State v. McCreven*, 170 Wn. App. 444, 462-63, 284 P.3d 793 (2012) (quoting *Walden*, 131 Wn.2d at 474).

Ray claims that his testimony shows that he acted in self-defense. But the testimony of multiple other witnesses is inconsistent with that claim. When viewing the evidence in the light most favorable to the State, there is sufficient evidence to support the jury's finding beyond a reasonable doubt that Ray did not act in self-defense. While Ray provided a completely different version of events, we do not disturb credibility determinations. *Cardenas-Flores*, 189 Wn.2d at 266. Ray's testimony was not corroborated by any of the other witnesses, and as discussed above, much of his testimony was directly contradictory to that of other witnesses.

The State presented substantial testimony from multiple witnesses who testified that Ray and Sabb did not have a physical altercation, Ray left the house and returned, and Sabb did not ever shoot at Ray because Sabb's gun never left the gun case. Therefore, we hold that sufficient evidence supported the jury's finding beyond a reasonable doubt that Ray did not act in self-defense.

## II.  PRIOR THIRD DEGREE ROBBERY CONVICTION—PREDICATE STRIKE OFFENSE

Ray argues that his prior Oregon robbery conviction does not count as a predicate strike offense because the court did not determine whether there was a factual basis for his plea. We presume the Oregon court followed the relevant statute in accepting Ray's plea, and Ray fails to show otherwise. Thus, we hold that the prior robbery conviction counts as a predicate strike offense.

The parties agree that if valid, the prior robbery conviction counts as a predicate strike offense under the POAA.[8] Thus, we only address whether there was a factual basis for Ray's prior plea to third degree robbery.

Due process requires that a defendant's guilty plea must be knowing, intelligent, and voluntary. *State v. Codiga*, 162 Wn.2d 912, 922, 175 P.3d 1082 (2008). In 1993, when Ray was sentenced for the Oregon robbery in the third degree, ORS § 135.395[9] stated that "[a]fter accepting a plea of guilty or no contest, the court shall not enter a judgment without making such inquiry as may satisfy the court that there is a factual basis for the plea."

---

[8] We held in *State v. McIntyre* that third degree robbery in Oregon is comparable to second degree robbery in Washington. 112 Wn. App. 478, 480-83, 49 P.3d 151 (2002).

[9] Found at: https://www.oregonlaws.org/ors/135.395.

> The State is not required to prove the constitutional validity of prior convictions before they can be used at sentencing. Generally, the defendant has no right to contest prior convictions at a subsequent sentencing because there are more appropriate methods for contesting the validity of prior convictions.
>
> But a prior conviction that is unconstitutionally invalid on its face may not be considered at sentencing. "On its face" includes the judgment and sentence and documents signed as part of a plea bargain. A conviction is facially invalid if constitutional invalidities are evident without further elaboration.

*State v. Webb*, 183 Wn. App. 242, 250, 333 P.3d 470 (2014) (internal footnote and citations omitted).

At Ray's sentencing hearing, the State provided certified copies of the plea agreements and the judgments and sentences for Ray's prior felony convictions, including the Oregon third degree robbery conviction. Ray argued that the third degree robbery plea agreement was facially invalid because the fact section was crossed out, and thus, there was no evidence that the Oregon court found a factual basis for his plea. On appeal, Ray repeats this same argument. But we presume that the Oregon court followed the procedure outlined in ORS § 135.395 and determined that there was an adequate factual basis to support Ray's no contest plea for third degree robbery. Ray has made no showing to the contrary. Ray's argument, without more, is insufficient to show that his plea lacked a factual basis. *See Ammons*, 105 Wn.2d at 188.

Thus, we hold that the trial court correctly concluded that Ray's prior robbery conviction counts as a predicate strike offense under the POAA.

### III. CONSTITUTIONALITY OF THE POAA

Ray argues that (1) the POAA violates article 1 section 14 of the Washington Constitution because it does not allow a trial court to consider the defendant's youthfulness at the time of his or her predicate offense, (2) mandatory life without the possibility of release is a cruel punishment

under article 1, section 14 of the Washington Constitution, and (3) the *Fain* test for proportionality of a sentence is no longer adequate. We disagree with Ray and hold that the POAA does not violate article 1, section 14 of the Washington Constitution, and that his other arguments also fail.

Our Supreme Court recently held that (1) "it is not categorically cruel under article 1, section 14 of the Washington Constitution to impose mandatory sentences of life without the possibility of parole under the POAA on adult offenders who committed one of their prior most serious offenses as young adults," and (2) sentences imposed under the POAA are constitutional and not cruel under article 1, section 14. *Moretti*, 193 Wn.2d at 818, 820. *Moretti* addressed whether a defendant who committed a first strike offense as a young adult should be sentenced to life without the possibility of release, or the benefit of discretion, without consideration of his youthfulness at the time of the predicate strike offense. *Moretti*, 193 Wn.2d at 814-18. Thus, Ray's first two arguments regarding the constitutionality of a POAA sentence fail.

Ray next argues that the *Fain* test for proportionality of a sentence, which considers the nature of the offense, is no longer adequate to protect against cruel punishment. *Fain* is a Washington Supreme Court case, and "[t]his appellate court remains bound by a decision of the Washington Supreme Court." *State v. Winborne*, 4 Wn. App. 2d 147, 175, 420 P.3d 707 (2018). Thus, we hold that Ray's argument related to *Fain* fails.

## IV. 2019 AMENDMENTS—RCW 9.94A.030

Ray argues that the legislature's 2019 amendments to RCW 9.94A.030(33), removing second degree robbery as a most serious offense, are retroactive, and thus, his sentence must be reversed. Consistent with our recent decision in *State v Jenks*, we hold that the 2019 amendments

to RCW 9.94A.030(33) apply prospectively, not retroactively. ___ Wn. App. 2d___, 459 P.3d 389 (2020).

The legislature amended RCW 9.94A.030(33), removing second degree robbery as a most serious offense, effective July 28, 2019. LAWS OF 2019, ch. 187, § 1. We recently held that the 2019 amendments to RCW 9.94A.030(33) do not apply to invalidate the strike offense where the defendant was sentenced under the former version of RCW 9.94A.030(33), if the former statute was in effect at the time the defendant committed the strike offense. *Jenks*, 459 P.3d at 395-96.

At the time Ray was sentenced for his second strike offense, the Oregon third degree robbery, the former version of RCW 9.94A.030(33) was in effect. Thus, consistent with *Jenks*, we hold the 2019 amendments are not retroactive, and thus Ray's argument fails.

V. LFOs

Ray argues, and the State concedes, that the trial court erred by imposing a $100 DNA collection fee and a $200 criminal filing fee. The State also concedes that the court erred by imposing interest on nonrestitution LFOs. We accept the State's concession and remand to the trial court with an order for the court to strike the $100 DNA collection fee, the $200 criminal filing fee, and all interest on the nonrestitution LFOs, and to amend the judgment and sentence accordingly.

No. 51348-0-II

CONCLUSION

We affirm Ray's conviction and sentence. We remand with an order to the trial court to strike the $100 DNA collection fee, the $200 criminal filing fee, and all interest on the nonrestitution LFOs, and to amend the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, A.C.J.

We concur:

MAXA, J.

GLASGOW, J.